114 P.3d 1174 (2005)
STATE of Washington, Respondent,
v.
James L. WOODS, Petitioner.
No. 74886-1.
Supreme Court of Washington, En Banc.
Argued October 21, 2004.
Decided June 30, 2005.
As Amended July 27, 2005.
*1175 Cheryl D. Aza, Washington Appellate Project, Seattle, for Petitioner.
Dennis John McCurdy, King County Prosecutor's Office, Seattle, for Respondent.
IRELAND, J.[*]
¶ 1 In this case, we are asked to determine whether the trial court abused its discretion in finding two children competent to testify against their father on charges of sexual molestation, and whether the trial court abused its discretion in admitting the children's hearsay statements to their foster mother and the state investigative specialist. We hold that the trial court did not abuse its *1176 broad discretion, and we therefore affirm the Court of Appeals.

FACTS
¶ 2 Defendant James Woods is the father of two girls, HW and PW. HW was born on August 5, 1995, and PW was born on June 13, 1997. The girls lived with Woods and their mother from birth until 1998, when the mother left the home. Thereafter, the girls lived with Woods and began scheduled, supervised visits with the mother.
¶ 3 During a visit in March 2001, the mother noticed bruises on the girls. She called Child Protective Services (CPS) and said that she believed the girls had been abused and she did not want to return them to Woods. When interviewed by a CPS caseworker, each girl related instances of physical abuse by Woods. CPS took the girls into custody and placed them in a temporary foster home from March to June 2001. In June, the girls were taken to the foster home of Mike and Amanda Titus, where they remained throughout Woods's trial.
¶ 4 Shortly after arriving at the Titus home, the girls asked Amanda questions about whether physical abuse was acceptable, and they told Amanda about physical abuse inflicted by Woods. Amanda observed that the girls physically abused each other. When the girls made such statements or exhibited such behavior, Amanda noted it in a journal, as she had been trained to do in her foster-parenting class.
¶ 5 Amanda Titus also observed sexualized behavior of the girls: fondling of the family dog's genitals, insertion of fingers and bath toys in the vagina during a bath, lifting their shirts and stating "these are boobies." On at least three or four occasions, Amanda saw the girls rub their hands between dolls' legs while saying "hold still," "be a good girl," and "stop daddy." Report of Proceedings (RP) (Mar. 26, 2002) at 167-71; 5 RP at 25-8. Amanda also observed one girl rub the other girl's chest, who then said "stop daddy." RP (Apr. 3, 2002) at 31-2.
¶ 6 In July 2001, HW told Amanda that "Daddy Jim touched her like PJ." RP (Mar. 26, 2002) at 180. HW pointed to her vagina and said that "Daddy Jim touched me here, too." Id.
¶ 7 Shortly thereafter, PW was awake most of one night with nightmares. PW told Amanda that the nightmares were about her father and that she did not want to be hurt by her father anymore. After a discussion about "good" touches and "bad" touches, both girls said that Woods had touched them "bad."
¶ 8 In September 2001, PW described in detail acts of molestation by Woods. PW related that sometimes when HW was at school, PW was allowed to watch cartoons only after she "did bad things first." RP (Mar. 26, 2002) at 198-99; RP (Apr. 3, 2002) at 98. PW stated that some of the molestation occurred when she was three years old. PW told Amanda that the abuse occurred in an "orange chair," on the bed, or on the floor.
¶ 9 In December 2001, HW also complained to Amanda about sexual abuse by Woods. HW described her bedroom where it took place, including the wall color and carpeting. HW said that much of abuse took place in the "orange chair" or on the floor, which was colder than her floor at the Titus home. RP (Mar. 26, 2002) at 186. In addition, HW gave clear and descriptive details about the acts of abuse. Id. at 189. As she had done with PW, Amanda refrained from asking questions of HW about the sexual incidents and allowed HW to talk uninterrupted, while Amanda took notes.
¶ 10 The girls were interviewed by Christine Liebsack, a child interview specialist from the prosecutor's office. The girls underwent a medical examination, which was inconclusive regarding sexual abuse.
¶ 11 The State charged Woods with two counts of first degree child molestation in violation of RCW 9A.44.083. Clerk's Papers at 1-2. The information alleged the incidents involving PW occurred "during a period of time intervening between June 13, 1997 through July 9, 2001," and the incidents involving HW occurred "during a period of time intervening between August 5, 1995 through July 9, 2001." Id. In other words, the charging document used the girls' dates of birth through July 9, 2001.
*1177 ¶ 12 At a three day pretrial hearing, the court found the girls competent to testify. PW was then four years old and HW was six years old. The court also ruled that Amanda Titus and Christine Liebsack would be allowed to testify to the girls' out of court statements.
¶ 13 The jury convicted Woods on both counts. The court imposed a standard range sentence. Woods appealed, and Division One of the Court of Appeals affirmed in an unpublished opinion. State v. Woods, noted at 119 Wash.App. 1005, 2003 WL 22683011.

ISSUES
1. Whether the trial court abused its discretion in determining that the victims were competent to testify?
2. Whether the trial court abused its discretion in admitting the girls' out of court statements under the child hearsay statute?

STANDARD OF REVIEW
¶ 14 The determination of competency is within the sound discretion of the trial court, and it will not be disturbed on appeal in the absence of proof of a manifest abuse of discretion. In re Dependency of A.E.P., 135 Wash.2d 208, 223, 956 P.2d 297 (1998); State v. Allen, 70 Wash.2d 690, 692, 424 P.2d 1021 (1967). There is probably no area of law where it is more necessary to place great reliance on the trial court's judgment than in assessing the competency of a child witness. State v. Borland, 57 Wash. App. 7, 11, 786 P.2d 810 (1990). The competency of a youthful witness is not easily reflected in a written record, and we must rely on the trial judge who sees the witness, notices the witness's manner, and considers his or her capacity and intelligence. Allen, 70 Wash.2d at 692, 424 P.2d 1021; State v. Przybylski, 48 Wash.App. 661, 665, 739 P.2d 1203 (1987).
¶ 15 On appeal, we may examine the entire record in reviewing the competency determination. State v. Avila, 78 Wash.App. 731, 737, 899 P.2d 11 (1995).

ANALYSIS

Did the trial court abuse its discretion in determining that the victims were competent to testify?
¶ 16 The age of a child is not determinative of a child's competency to testify. State v. Pham, 75 Wash.App. 626, 630, 879 P.2d 321 (1994). By statute, "persons who appear incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly" are not competent to testify. RCW 5.60.050(2).
¶ 17 A young child is competent to testify if she: (1) understands the obligation to speak the truth on the witness stand; (2) has the mental capacity, at the time of the occurrence concerning which she is to testify, to receive an accurate impression of it; (3) has a memory sufficient to retain an independent recollection of the occurrence; (4) has the capacity to express in words her memory of the occurrence; and (5) has the capacity to understand simple questions about the occurrence. Allen, 70 Wash.2d at 692, 424 P.2d 1021.
¶ 18 In this case, Woods contends that the trial court erred in finding that the second Allen factor was satisfied. Woods argues that the trial court arbitrarily picked an abuse date of March 2001 and then used that date in analyzing the second factor, whether the girls had mental capacity at the time of the abuse. According to Woods, this was error because the record "failed to demonstrate when any alleged abuse might have occurred, making it impossible for the trial court to have found the girls had the mental capacity at the time of the alleged event to accurately perceive what happened to them." Petition for Review at 6.
¶ 19 In response to this argument, Division One held that although the time period of abuse used in the charging document was broad, "the record established a relatively narrow period of time in which the alleged abuse could have occurred." Woods, 2003 WL 22683011, at *1. The court pointed out that the evidence showed the abuse occurred between PW's third birthday and the time that the girls were removed from Woods's home. The children were able to provide *1178 accurate recollections of events, places, and people from that time period. Thus, the Court of Appeals held that the trial court did not abuse its discretion in finding that the girls had the mental capacity at the time of the abuse to receive an accurate impression of it.
¶ 20 Woods contends that the Court of Appeals decision is at odds with In re Dependency of A.E.P., 135 Wash.2d 208, 956 P.2d 297 (1998). According to Woods, A.E.P. requires that the trial court must be able to affix a particular date to the abuse before it can make a determination as to the capacity of the child at the time of the abuse. However, A.E.P. does not support that rule. While A.E.P. did state that the trial court must have a "time period" during which the abuse occurred, A.E.P. does not require a young child to provide a specific date of the abuse in order for the court to make a determination of competency. Rather, A.E.P. reaffirms that a child's ability to receive just impressions at the time of the abuse may be demonstrated by the child's ability to recall events or circumstances occurring before the abuse or during the time period of the abuse. A.E.P., 135 Wash.2d at 225, 956 P.2d 297.
¶ 21 In A.E.P., a couple who baby-sat the five year old victim claimed to have observed sexualized behavior by the child. In eliciting information from the child, the couple used "completely closed [and] leading questions." A.E.P., 135 Wash.2d at 213, 956 P.2d 297. When interviewed by CPS, the child alleged that she had been inappropriately touched by both her mother and father, and also by the babysitters' son, C.M. During separate interviews with an examining physician, a police detective, and a psychologist, the child denied that her father had touched her and alleged that it was C.M. who touched her privates. A.E.P., 135 Wash.2d at 218-19, 956 P.2d 297. Other children also testified that C.M. would inappropriately touch and fondle kids on the school bus. Nevertheless, the trial court found that A.E.P. was competent to testify and concluded that A.E.P. had been abused by her father. A.E.P., 135 Wash.2d at 221, 956 P.2d 297.
¶ 22 On appeal, this court reversed, holding that A.E.P.'s competence to testify was not properly established. The record revealed that A.E.P. was asked only one time when the abuse occurred, and she "was unable to fix any particular point in time when the alleged touching occurred." A.E.P., 135 Wash.2d at 224, 956 P.2d 297. Moreover, this court noted that there "is simply no information in the record which helps to narrow the time window of when the event occurred." A.E.P., 135 Wash.2d at 225, 956 P.2d 297. We explained that if A.E.P had been able to relate impressions of events which occurred contemporaneously with the alleged abuse, the court could have inferred A.E.P.'s competency to testify about the abuse incidents as well. A.E.P., 135 Wash.2d at 225, 956 P.2d 297 (citing Przybylski, 48 Wash.App. at 665, 739 P.2d 1203).
¶ 23 Unlike the child in A.E.P., the children in this case were able to provide details of contemporaneous events and circumstances which demonstrated that they had the mental capacity to receive accurate impressions. Whereas the child in A.E.P. gave a confused answer regarding when the abuse occurred and even recanted her allegations against her father while continuing to assert allegations against an uncharged person, the children in this case gave clear and consistent answers.
¶ 24 PW testified to the living situation at Woods's apartment: she slept in the same bed as her sister, and Woods slept in a different room. PW said the television was in the living room, along with a couch and chairs. PW stated some of the abuse occurred in the orange chair and sometimes when HW was at school. PW stated that she recalled that some of the abuse occurred when she was three years old (she turned three in June 2000). In addition, PW gave clear, specific, consistent details concerning the acts of abuse. Thus, the evidence not only demonstrated PW's capacity to perceive, but also established a relatively narrow time frame during which some molestation occurred: the nine-month period between PW's third birthday in June 2000 and her removal from Woods's home in March 2001.
¶ 25 HW's testimony also demonstrated that at the time of the abuse, she had the mental capacity to receive accurate impressions *1179 of events. Like her younger sister, HW recalled being abused in "the orange chair." She remembered that after her mother moved out, they lived with Woods and she and her sister would take the bus to see their mother. HW described her bedroom at Woods's apartment, including the color of the walls and the carpeting. HW even recalled her living situation prior to the time her mother left the home and prior to the abuse. If the child demonstrates she had the ability to accurately perceive events prior to the abuse, the court can infer that the ability also existed at the time of the abuse. Pham, 75 Wash.App. at 630, 879 P.2d 321.
¶ 26 PW's and HW's testimony is far from the confused and conflicting statements made by the child in A.E.P. Both PW and HW accurately and consistently recounted events and places contemporaneous with the molestation or occurring before the molestation.
¶ 27 Woods argues that PW's testimony was inconsistent. At one point PW testified that her bedroom at her father's apartment was upstairs even though the apartment was a single story unit. However, an inconsistency in the child's testimony goes to the child's credibility and not to admissibility. State v. Woodward, 32 Wash. App. 204, 646 P.2d 135 (1982) (six year old child was inconsistent on several details but was unwavering in her testimony concerning the defendant's sexual intercourse with her). Furthermore, we note that overall the testimony of PW and HW was quite consistent concerning the acts of sexual molestation.
¶ 28 Woods focuses on the trial court's statement that it determined that the children were competent as of March 1, 2001. Woods would have us interpret this comment as indicating that the trial court found the children competent on that date alone. This is an unreasonable interpretation of the court's comment, particularly in the context of a three day hearing during which there was testimony about multiple acts of molestation over a period of time. At the conclusion of the hearing, the court determined that the children had the ability to accurately perceive the events that occurred. Our cases have established that the trial court may infer the child's ability to accurately perceive events from the "child witness's overall demeanor and the manner of her answers," thus satisfying the second Allen factor. State v. Sardinia, 42 Wash.App. 533, 537, 713 P.2d 122 (1986)
¶ 29 For example, in Sardinia, the court held that the second Allen factor was satisfied even though the child's testimony did not clearly reveal her mental capacity at the time of the occurrence. Sardinia, 42 Wash.App. at 537, 713 P.2d 122. See also State v. Bailey, 52 Wash.App. 42, 757 P.2d 541 (1988), aff'd, 114 Wash.2d 340, 787 P.2d 1378 (1990) (trial court's decision admitting testimony by victim aged three at time of abuse not abuse of discretion); State v. Hunt, 48 Wash.App. 840, 741 P.2d 566 (1987) (upholding trial court decision allowing testimony by a victim who was four years old when testifying to abuse that occurred when she was between two and one-half and three and one-half years of age).
¶ 30 The purpose of the second Allen factor is to ensure that the child has the mental capacity to perceive accurately the events to which the child is testifying. In this case, the trial court observed both PW's and HW's overall demeanor and manner of answering. The trial court found that the facts elicited at the competency hearing narrowed the time of the abuse to a period of approximately nine months. The trial court heard the girls describe events and places contemporaneous with this nine month period. Our review of the record confirms that the trial court properly exercised its discretion in finding the second Allen factor was satisfied. The defendant bears the burden of establishing that the trial court abused its broad discretion in finding PW and HW competent. Defendant has failed to do this.
Did the trial court abuse its discretion in admitting the girls' out of court statements under the child hearsay statute?
¶ 31 Defendant Woods also contends the trial court abused its discretion in allowing the foster mother, Amanda Titus, and the child interview specialist, Christine Liebsack, to testify to the girls' out of court statements.
*1180 ¶ 32 The child victim hearsay statute provides for the admission of hearsay statements when the declarants are victims of sexual abuse under the age of 10. RCW 9A.44.120. Under the statute, the hearsay is admissible if.
(1) The court finds... that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
(2) The child either:
(a) Testifies at the proceedings; or
(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
RCW 9A.44.120. "A finding that statements are within the statutory child abuse exception should not be reversed absent a showing of manifest abuse of discretion." State v. Jackson, 42 Wash.App. 393, 396, 711 P.2d 1086 (1985).
¶ 33 In this case, the children testified, so the issue is whether their statements were sufficiently reliable.[1] Reliability is analyzed according to the nine Ryan factors. State v. Ryan, 103 Wash.2d 165, 691 P.2d 197 (1984). The nine factors are (1) whether the child had an apparent motive to lie, (2) the child's general character, (3) whether more than one person heard the statements, (4) the spontaneity of the statements, (5) whether trustworthiness was suggested by the timing of the statement and the relationship between the child and the witness, (6) whether the statements contained express assertions of past fact, (7) whether the child's lack of knowledge could be established through cross-examination, (8) the remoteness of the possibility of the child's recollection being faulty, and (9) whether the surrounding circumstances suggested the child misrepresented the defendant's involvement. Ryan, 103 Wash.2d at 175-76, 691 P.2d 197. Not every factor need be satisfied; it is enough that the factors are substantially met." State v. Swan, 114 Wash.2d 613, 652, 790 P.2d 610 (1990).
¶ 34 The parties do not dispute that factors one through five have been satisfied. However, Woods claims the trial court erred regarding factors six through nine. As to factor seven, Woods contends that the trial court erred in failing to discuss this factor. Factor seven applies in cases where the child declarant is unavailable to testify. Here, the child declarants testified so the trial court was correct in not evaluating this factor.
¶ 35 As to factor eight, Woods contends the trial court erroneously used March 2001 as the date of the abuse even though the specific date of the abuse had never been established. This is essentially the same argument made by the defendant in State v. Young, 62 Wash.App. 895, 802 P.2d 829, 817 P.2d 412 (1991). There, Young argued that it was impossible to properly evaluate factor eight and determine whether the child's recollection was faulty because it was unclear when the incidents occurred. The court found the argument unpersuasive because "it incorrectly equates knowledge of when an incident occurred with reliability of a child's recollection." Young, 62 Wash.App. at 902, 817 P.2d 412. Regardless of when the incident took place, the jury evaluates a child's recollection by observing the manner in which the child recounts the events, the child's memory regarding other events (including current events), and the child's demeanor. Young, 62 Wash.App. at 902, 802 P.2d 829. In Young, the record indicated that the child had a normal memory and ability to perceive, which satisfied factor eight.
¶ 36 Woods's argument regarding factor eight is similarly ineffective here. The trial court considered whether the girls' recollections were faulty and decided that they were not. Testimony from the foster mother established that the girls had a normal memory and ability to perceive. Woods does not point to evidence demonstrating otherwise, nor is such evidence found in our review of *1181 the record. The trial court did not abuse its discretion in finding factor eight satisfied.
¶ 37 Finally, as to factor nine, the trial court did not specifically refer to this factor. The trial court did discuss other circumstances that might affect reliability, such as whether the children may have talked with each other about the allegations and been influenced by each other. However, the court found no such evidence. The trial court did not abuse its discretion in finding this factor satisfied.
¶ 38 Not every Ryan factor must be satisfied in order for the trial court to find a child's out of court statements reliable. Swan, 114 Wash.2d at 652, 790 P.2d 610. In this case, at least eight of the nine factors are satisfied. The trial court did not abuse its discretion in finding the Ryan factors "substantially" established the reliability of the children's out of court statements. The statements were properly admitted under the child victim hearsay statute.

Conclusion
¶ 39 The trial court is given broad discretion in determining the competency of witnesses to testify and in determining the reliability of a child victim's hearsay. There was ample evidence to support the trial court's findings on both issues. The decision of the Court of Appeals is affirmed.
BRIDGE, OWENS and FAIRHURST, JJ., concur.
SANDERS, J. (dissenting).
¶ 40 James Woods, the father, was convicted of two counts of first degree child molestation of his daughters, HW and PW, and sentenced to 95 months in the penitentiary. Clerk's Papers at 67. The convictions rest wholly on the uncorroborated testimony of these small children and hearsay statements attributed to them. However, their competency to testify to events prior to March 2001 was never established. An innocent man may be imprisoned as a result.
¶ 41 For a child witness to be competent to testify it is essential that the trial court find the child had the requisite mental capacity "at the time of the occurrence concerning which he is to testify." State v. Allen, 70 Wash.2d 690, 692, 424 P.2d 1021 (1967). Here the trial court found the children were competent as of March 2001 ("But she clearly had the ability in March of '01 to have accurate impressions of events that were occurring to her."). Report of Proceedings (RP) (Mar. 27, 2002) at 353-54. Yet there is a paucity of evidence that the charged events in fact took place in March 2001, the last month they were in their father's custody. The charging document alleged that the acts took place sometime between the girls' birth and July 9, 2001  several months after they left their father's custody, i.e., the charging period included literally years before March 2001.
¶ 42 The lead opinion poses the question as "[w]hether the trial court abused its discretion in determining that the victims were competent to testify?" lead opinion at 1177, and answers no. And I agree, provided we qualify our answer that the trial court determined, in its discretion, that the children were competent to testify regarding events which took place in March 2001 and thereafter, not before.
¶ 43 The problem is nothing in this record, and I mean nothing, establishes that the alleged abuse took place in March 2001 or thereafter.
¶ 44 The lead opinion claims the evidence "established a relatively narrow time frame during which some molestation occurred: the nine-month period between PW's third birthday in June 2000 and her removal from Woods's home in March 2001." Lead opinion at 1178. But even assuming this is correct, and I think it is a stretch on this record to suppose it is,[1] we must observe that eight of the nine months of the lead opinion's time frame wherein the abuse could have occurred are before the month in which the trial court concluded the girls could competently testify *1182 about events which occurred in that month and after.
¶ 45 The lead opinion attempts to bridge the fanciful gap by claiming it "is an unreasonable interpretation of the court's comment," lead opinion at 1179, to limit the child's competence to testify about events to March 2001 and thereafter. I disagree. That is, after all, exactly what the trial court said: "She [HW] appears to have sufficient memory to retain an independent recollection of the events, going back as far as March of 2001." RP (Mar. 27, 2002) at 354 (emphasis added).
¶ 46 If the object of a trial is not necessarily to procure a conviction but rather determine the truth through competent evidence, care must be taken to exclude incompetent testimony. In March 2001 HW was five years old and PW was three years old. Convictions based upon testimony from uncorroborated accounts of small children can be sustained provided that the trial court determines amongst other things, without abusing its discretion, that the child had the mental capacity at the time of the occurrence to receive an accurate impression of it. Here, however, there is simply no basis for that conclusion since the time of the occurrence was not established with reasonable probability during the period that either child had the mental capacity to receive an accurate impression.
¶ 47 Thus the case against the father falls like a house of cards. Moreover since the children could not competently testify to events occurring within the relevant time frame, they were "unavailable" as witnesses. This requires corroboration, of which there was none, as a prerequisite to admit child hearsay.
¶ 48 In a substantially similar situation we held:
Because A.E.P. was incompetent to testify, she was unavailable as a witness. Her hearsay statements regarding sexual abuse lacked corroboration and cannot be admitted under RCW 9A.44.120. We reverse the finding of abuse which was entered in the dependency hearing.
In re Dependency of A.E.P., 135 Wash.2d 208, 234, 956 P.2d 297 (1998).
¶ 49 A similar result should follow here.
¶ 50 For these reasons I would reverse the convictions.
MADSEN, C. JOHNSON, JJ., and ALEXNADER, C.J., concur.
NOTES
[*] Justice Faith Ireland is serving as justice protempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).
[1] Defendant Woods also claims that the girls' hearsay statements should not have been admitted because they were not corroborated. The statute requires corroboration only when the children do not testify. Because we affirm the trial court's decision regarding the girls' competency to testify, corroboration was unnecessary and we do not reach the issue.
[1] Both children lived in the same location prior to March 2001 (PW all her life and HW most of her life). Therefore memories about their living situation is not date specific. Moreover alleged memories about events or physical conditions were not verified from an independent source, e.g., did an "orange chair" exist and, if so, when?