# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71928-9-I |
|  | ) |  |
| Respondent, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| FIDEL BAUTISTA-GONZALEZ, | ) | UNPUBLISHED |
|  | ) |  |
| Appellant. | ) | FILED: September 21, 2015 |
|  | ) |  |

Cox, J. – A jury found Fidel Bautista-Gonzalez guilty of four counts of rape of a child in the first degree. On appeal, he fails to demonstrate that the trial court abused its discretion in finding that one of the child victims was competent to testify. He also fails to establish any reversible evidentiary error. We affirm.

Andrea C. began a relationship with Bautista-Gonzalez in 2009. For several years, Andrea and her two young daughters, L.C. and W.C., lived intermittently with Bautista-Gonzalez. Bautista-Gonzalez would watch the girls while Andrea attended her regular evening AA meetings.

In late November 2011, Andrea noticed that four-year-old L.C. had painful blisters around her vagina and anus. L.C.'s physician diagnosed her with herpes simplex type 2. A follow-up examination at Seattle Children's Hospital indicated that L.C. was experiencing a primary outbreak and had been exposed to the virus in recent weeks or months through anal contact.

Andrea and a hospital social worker contacted the police and Child Protective Services (CPS). Andrea also arranged a herpes test for all of the men

in her family. Andrea did not suspect that Bautista-Gonzalez might have been involved. But Bautista-Gonzalez was the only man who tested positive for herpes. Andrea also learned that she had herpes.

As part of the CPS investigation, child interview specialist Carolyn Webster interviewed L.C. and W.C. in December 2011. Neither child disclosed any sexual abuse, but Webster and witnesses to the interview noted that L.C. refused to talk about Bautista-Gonzalez. At CPS's insistence, Andrea moved out of Bautista-Gonzalez's home and moved into her mother's home. At that point, CPS closed the case.

In 2012, Andrea purchased her own home. At some point, Andrea resumed her relationship with Bautista-Gonzalez. Bautista-Gonzalez regularly spent the night at Andrea's house and cared for the two children while Andrea attended her AA meetings. In November 2012, the couple broke up for the last time, although Bautista-Gonzalez continued to visit Andrea to help out and babysit the children. In early 2013, Andrea asked Bautista-Gonzalez to cover the windows with insulating plastic. Bautista-Gonzalez also watched the children at the same time. Andrea had no contact with Bautista-Gonzalez after January 19, 2013.

In early February 2013, Andrea was lying in bed and reading to the girls. L.C. was five years old and W.C. was eight. W.C. asked Andrea, "mama, do you have what boys have?"[1] In response to Andrea's question, W.C. said, "boys

---

[1] Report of Proceedings (March 3, 2014) at 6.

have the bananas and girls have the flowers."[2] L.C. added, "just like Fidel has."[3] Andrea asked L.C. if she had seen Bautista-Gonzalez's penis. L.C. replied, "when he used to do uh-uh-uh to us," a term that L.C. and W.C. used for having sex.[4] L.C. explained that "it only hurt when he did it on my butt, not when he did it on my flower."[5] W.C. indicated that Bautista-Gonzalez had also done "uh-uh-uh" to her and that it only hurt "when he would do it in my butt."[6]

On the following day, Andrea reported the conversation to the police. Child interview specialist Carolyn Webster scheduled interviews with L.C. for two days later. But before the interview, Andrea became concerned that the children might not report the abuse, as had happened during the 2011 interview. Ignoring the police request that she not question L.C. and W.C. further before the interviews, Andrea borrowed a video camera. Andrea then filmed the girls after asking them to repeat what they had told her about Bautista-Gonzalez. During the interview, L.C. added that one of the incidents of abuse occurred on the day that Bautista-Gonzalez had put plastic on the windows. Andrea gave the video recording to the police. In videotaped interviews, both L.C. and W.C. told Webster that Bautista-Gonzalez had sexually abused them on several occasions.

---

[2] Id.
[3] Id.
[4] Id. at 8.
[5] Id. at 12.
[6] Id.

The State charged Bautista-Gonzalez with four counts of rape of a child in the first degree, two counts involving L.C. and two counts involving W.C. Following a hearing, the trial court found both L.C. and W.C. competent to testify.

L.C. and W.C. testified at trial. The trial court also admitted the video recordings of Webster's interviews with the children and Andrea's video recording of her interview. Bautista-Gonzalez testified that he was surprised when he tested positive for herpes and believed that Andrea had infected him. He denied sexually assaulting L.C. and W.C. or having any inappropriate contact with them.

The jury found Bautista-Gonzalez guilty as charged. The court imposed concurrent standard range indeterminate sentences of 318 months to life.

Bautista-Gonzalez appeals.

*Competency*

Bautista-Gonzalez contends that the trial court violated his due process right to a fair trial when it found W.C. competent to testify. He argues that the State failed to establish that W.C. could distinguish truth from falsity.

In Washington, all persons are presumed competent to testify regardless of their age.[7] The party challenging the competency of a child witness bears the burden of rebutting this presumption with evidence establishing one of the statutory grounds for incompetency set forth in RCW 5.60.050, including an inability "of receiving just impressions of the facts, respecting which they are

---

[7] State v. S.J.W., 170 Wn.2d 92, 102, 239 P.3d 568 (2010).

examined, or of relating them truly."[8] The factors set forth in State v. Allen continue to guide the trial court's determination of a child witness's competency:

> (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.[9]

"The competency of a youthful witness is not easily reflected in a written record, and we must rely on the trial judge who sees the witness, notices the witness's manner, and considers his or her capacity and intelligence."[10] Consequently, an appellate court reviews the trial court's determination of competency for a manifest abuse of discretion.[11]

On appeal, Bautista-Gonzalez challenges only the first Allen factor – W.C.'s understanding of the obligation to tell the truth. In particular, he points to testimony at the competency hearing, during which W.C. said that she would not get in trouble if she told a lie to her mother and responded that the deputy prosecutor would be telling the truth if she said that the blue pen she was holding in her hand was pink.

Bautista-Gonzalez also relies on W.C.'s apparent confusion during the two pre-trial interviews with Caroline Webster. During the February 2013 interview

---

[8] RCW 5.60.050(2); see also S.J.W., 170 Wn.2d at 102.
[9] In re Dependency of A.E.P., 135 Wn.2d 208, 223, 956 P.2d 297 (1998) (quoting, State v. Allen, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967)).
[10] State v. Woods, 154 Wn.2d 613, 617, 114 P.3d 1174 (2005).
[11] Id.

with Webster, W.C. responded "yes" when asked if it is good to tell a lie and then said, "I forgot," when asked to explain further. During the December 2011 interview, W.C. repeatedly referred to a story and an "accident" in which she apparently "died years ago."[12]

Bautista-Gonzalez contends that the record established W.C.'s long-standing inability to understand the difference between telling the truth and telling a lie and that the trial court therefore erred in finding her competent to testify.

As the trial court recognized, W.C.'s testimony during the pre-trial interviews and competency hearing must be considered in context. During the competency hearing, the court heard extensive testimony about the results of W.C.'s evaluation in August 2013 for fetal alcohol syndrome. Dr. Julia Bledsoe, a pediatrician at the University of Washington, diagnosed W.C. with static encephalopathy and alcohol exposed, a condition involving significant central nervous system damage and dysfunction. W.C. also has Attention Deficit Hyperactive Disorder. Although W.C. has a normal I.Q., her condition has resulted in a significant language learning disability.

Dr. John Thorne, a speech language pathologist, explained that W.C.'s language disabilities could cause her some difficulties when attempting to correct miscommunications. He also noted that such impairment causes difficulties with words that involve finer distinctions, such as the distinction between "often" and "frequently." Thorne commented that although W.C. was more likely to have

---

[12] Report of Proceedings (March 6, 2014) at 42.

-6-

difficulties with expressing her memory of any event in words than other children, "even children with very severe language impairments communicate their message most of the time."[13]

During her testimony at the competency hearing, W.C. testified in detail about her school and her teacher. She described how she had celebrated Christmas and described the presents she received. W.C. was not responsive to all questions and could not explain precisely why it was bad to tell a lie. But she repeatedly acknowledged that it was important to tell the truth:

> Q. Now, [W.C.], do you understand that it's important that you tell the truth today? Do you?
>
> A. Yes.
>
> Q. Okay. And can you tell me why that's important?
>
> A. Because we got to tell the truth.
>
> Q. Okay. And do you understand that when you – [W.C.], can you put your bear down, please? Do you understand when you come to court that it's important to tell the truth?
>
> A. Yes.
> …
> Q. How often have you talked to your mom about why you're in court today?
>
> A. Because we're here to tell the truth.
> …
> A. [Andrea] doesn't make stories about Fidel.
>
> Q. Okay. Did she tell you to make up a story?
>
> A. No.

---

[13] Report of Proceedings (January 9, 2014) at 290.

Q. Okay. And are you making up the story about Fidel?

A. No.

Q. Now, do you know what a lie is? Do you know that word?

A. Yes.

Q. Okay. Can you tell me what it means?

A. It means when you lie, it's not even nice to lie.

Q. Okay. It's not nice to lie?

A. (Pause.)

Q. Okay. Now, did your mom tell you to lie in court today?

A. No.

Q. No? What did she tell you?

A. She tell me to tell the truth.

Q. Okay. And are you telling the truth today?

A. Yes.[14]

After considering the testimony at the competency hearing and viewing W.C.'s pre-trial interviews, the trial court found that she was competent to testify. The court acknowledged that there were problematic aspects to her testimony, but concluded that based on her testimony at the competency hearing, she was able to recall past events and experiences. The court expressly noted the progress in W.C.'s ability to respond to questions that occurred between her first interview in 2011 and her testimony in early 2014 at the competency hearing.

---

[14] Report of Proceedings (January 8, 2014) at 110-22.

Despite aspects that merited cross examination, the court found that W.C. was able to understand the obligation to tell the truth in court.[15] The evidence supports that determination.

Bautista-Gonzalez's reliance on State v. Karpenski[16] is misplaced. In Karpenski, the court reversed the child rape and child molestation convictions after concluding that the child victim was incapable of distinguishing truth from falsity. But the seven-year-old child victim in that case had taken an oath and promised to tell the truth and not make up any stories. He then described in "vivid detail" how he and his two-year-old brother had been born at the same time. The testimony at the competency hearing "merely manifest[ed] his long-standing, often-observed inability to distinguish what was true from what was not."[17]

Here, when asked in simple terms, W.C. usually described past events and circumstances accurately. Andrea acknowledged that when W.C. was younger, her language disability sometimes made it difficult to determine whether she was telling the truth or lying. But Andrea explained that this usually involved "little lies" and that W.C. was generally truthful in more serious situations. W.C. had no history of fabrication remotely comparable to the child victim in Karpenski. The trial court did not abuse its discretion in finding W.C. competent to testify.

---

[15] See State v. Carlson, 61 Wn. App. 865, 874, 812 P.2d 536 (1991) (inconsistencies in a child's testimony go to weight and credibility, not competency).

[16] 94 Wn. App. 80, 971 P.2d 553 (1999), overruled on other grounds in State v. C.J., 148 Wn.2d 672, 63 P.3d 765 (2003).

[17] Id. at 106.

*Child Hearsay*

Bautista-Gonzalez contends that the trial court erred in admitting the video recording that Andrea made of her interview of L.C. and W.C. shortly after they initially disclosed the abuse. He argues that the girls' hearsay statements were not spontaneous and therefore not admissible as child hearsay under RCW 9A.44.120.

Hearsay statements of a child under the age of 10 are admissible in a criminal case when the statements describe sexual or physical abuse of the child, the court finds that the time, content, and circumstances of the statements provide sufficient indicia of reliability, and the child testifies at the proceedings.[18] When determining the reliability of child hearsay, the trial court considers the nine Ryan[19] factors:

> (1) whether there is an apparent motive to lie, (2) the general character of the declarant, (3) whether more than one person heard the statement, (4) the spontaneity of the statements, (5) the timing of the declaration and the relationship between the declarant and the witness, (6) whether the statement contained express assertions of past fact, (7) whether the declarant's lack of knowledge could be established through cross-examination, (8) the remoteness of the possibility of the declarant's recollection being faulty, and (9) whether the surrounding circumstances suggested the declarant misrepresented the defendant's involvement.[20]

---

[18] RCW 9A.44.120; see State v. Kennealy, 151 Wn. App. 861, 880, 214 P.3d 200 (2009).

[19] See State v. Ryan, 103 Wn.2d 165, 691 P.2d 197 (1984).

[20] Kennealy, 151 Wn. App. at 880 (footnote omitted).

We review the admission of evidence under RCW 9A.44.120(1) for abuse of discretion.[21]

Bautista-Gonzalez's arguments rest on a brief statement in Ryan for the proposition that the girls' statements in the interview were not spontaneous because they were "in response to questioning."[22] Bautista-Gonzalez maintains that "the questioning negated a finding that the statements were spontaneous and/or trustworthy"[23] and that all statements "after these initial statements were also the result of questioning and were not spontaneous."[24]

It is well established, however, that the Ryan spontaneity factor is not undermined merely because the hearsay statement is in response to questioning. "For purposes of a child hearsay analysis, spontaneous statements are statements the child volunteered in response to questions that were not leading and did not in any way suggest an answer.[25] Bautista-Gonzalez's arguments provide no meaningful analysis of Andrea's questioning or any support for his conclusory assertion that the children's hearsay statements were not spontaneous for purposes of RCW 9A.44.120. We therefore decline to address further the alleged error.[26]

---

[21] State v. Swan, 114 Wn.2d 613, 665, 790 P.2d 610 (1990).
[22] Ryan, 103 Wn.2d at 176.
[23] Brief of Appellant at 17.
[24] Id. at 19-20.
[25] Carlson, 61 Wn. App. at 872; see also Swan, 114 Wn.2d at 649.
[26] See State v. Tinker, 155 Wn.2d 219, 224, 118 P.3d 885 (2005) (appellate court will decline to review an issue that is unsupported by cogent argument and briefing).

Bautista-Gonzalez also contends that the trial court erred in admitting portions of L.C.'s second interview with Webster, in which L.C. referred to his sexual contact with W.C. He asserts that the child hearsay describing sexual abuse of another is not admissible under RCW 9A.44.120.[27]

But the record fails to support Bautista-Gonzalez's assertion that Webster's second interview with L.C. was "admitted . . . in its entirety."[28] Rather, the trial court granted defense counsel's request that the video recording be redacted to delete references to sexual abuse of W.C. Consequently, the majority of the statements that Bautista-Gonzalez challenges on appeal were not admitted at trial. The only challenged statements admitted at trial were L.C.'s statements that Bautista-Gonzalez "did privates" to L.C. and W.C. and that Bautista-Gonzalez "was also doing our butt and our flower, but it hurted when he did our butt. But it didn't hurt when he did our flower."[29]

Even if the trial court erred in admitting these comments, the error was clearly harmless. L.C.'s two brief comments regarding sexual contact with W.C. were essentially identical to other evidence admitted without objection at trial, including W.C.'s trial testimony. Under the circumstances, there is no reasonable

---

[27] See State v. Harris, 48 Wn. App. 279, 284, 738 P.2d 1059 (1987) (RCW 9A.44.120 "does not by its terms apply to a statement by a child describing an act of sexual contact performed on a *different* child").

[28] Brief of Appellant at 21.

[29] Report of Proceedings (February 26, 2014) at 18.

No. 71928-9-I/13

likelihood that the outcome of the trial would have been different had the error not occurred.[30]

We affirm the judgment and sentence.

_____
Cox, J.

WE CONCUR:

_____

_____

---

[30] State v. Tharp, 96 Wn.2d 591, 599, 637 P.2d 961 (1981) (evidentiary error is not prejudicial "unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred").