IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>LORENZO REYES ARMENTA,<br><br>Appellant. | No. 86624-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — When she was seven years old, A.Z. described sexual abuse by her mother's former boyfriend, Lorenzo Armenta, that had taken place before she turned six years old. The State charged Armenta with rape of a child in the first degree and child molestation in the first degree. The trial court found A.Z. competent to testify at trial and admitted child hearsay testimony from her mother, grandmother, and aunt, as well as the forensic interviewer. On appeal, Armenta claims the trial court erred in finding A.Z. competent and allowing the hearsay testimony. We conclude the trial court did not abuse its discretion and affirm.

## FACTS

Lorenzo Armenta and Diana Garcia dated for approximately three years. They lived together, along with Garcia's daughter A.Z. and other family members.

Armenta and Diana ended their relationship when A.Z was almost six years old.[1] A.Z. had no further contact with Armenta.

Around two years later, when A.Z. was seven years old, she was having a sleepover with her aunt, Ana Karen Garcia, and grandmother, Eloisa Dominguez-Cira, when she told them that she and Armenta had "a secret." A.Z. explained that when Diana was not home, she and Armenta played "a game" in which he would blindfold her, place her hands on something, and have her make an up and down motion. He also would "put stuff in her mouth." A.Z. said that one time, when her eyes had not been completely covered, she could see that she was touching Armenta's "private part." She told Ana Karen and Dominguez-Cira that this happened when they lived in the "blue house." Ana Karen and Dominguez-Cira had A.Z. repeat the story three times. When asked why she had not told them before, A.Z. said that Armenta told her it was a secret and she could not tell anyone.

Dominguez-Cira called Diana and told her to come to the house quickly. When she arrived, Diana asked A.Z. what had happened. A.Z. repeated the information she had told her aunt and grandmother. A.Z. said the activities took place when they lived in the house with the trampoline and the big yard. Diana called the police and subsequently took A.Z. to the Children's Advocacy Center for a forensic interview with Keri Arnold. In a recorded interview, A.Z. told Arnold

---

[1] A.Z. was born June 11, 2012. Diana and Armenta ended their relationship in February 2018.

2

that Armenta asked her to keep a "secret." She again described being blindfolded, being made to touch his "privates" and "put [her] mouth on it," and provided additional details. Asked where these incidents happened, she said at the "blue and white" house where they used to live with Armenta.

The State charged Armenta with rape of a child in the first degree and child molestation in the first degree. The State sought to introduce testimony about A.Z.'s statements to Diana, Ana Karen, Dominguez-Cira, and Arnold. The court held a child hearsay hearing in which the four women testified. After the testimony, Armenta inquired, "There's an issue of competency for the child, so I'm assuming they need to call her still; is that correct? Or are they not going to call her?" The prosecutor stated the State did not intend to call A.Z. to testify at the child hearsay hearing, but she would testify at trial. The State explained that a child is presumed competent and the defendant is not entitled to a competency hearing. Armenta replied, "We have indicated from the beginning . . . that there was a challenge to the competency of the child to testify. If the State is going to rely solely upon the testimony of their [sic] mother, that's their call, but I don't think that's sufficient for the Court to make that determination." The court reminded Armenta that he bore the burden of overcoming the presumption that the child was competent. Armenta had not subpoenaed A.Z. but stated that he could "challenge her competency based upon what the mother has testified to." Armenta argued that A.Z. was not competent because "[t]here's been no indication that she understands the obligation to speak the truth on the witness

3

stand," and "[t]here has been absolutely no testimony by the State to indicate that she has the mental capacity at the time of the occurrence to receive an accurate impression."

After hearing the parties' arguments on competency, the trial court found A.Z. competent to testify based on descriptions by her mother and the video and transcript of the forensic interview. The court reiterated that children are presumed competent and Armenta had not produced sufficient evidence for it to find A.Z. not competent. The court also admitted the child hearsay testimony from Diana, Ana Karen, Dominguez-Cira, and Arnold.

The child hearsay witnesses testified at trial. A.Z. also testified and faced cross-examination. A jury convicted Armenta as charged. The court sentenced him to a standard range indeterminate sentence of 160 months to life.

Armenta appeals.

DISCUSSION

I. Competency to Testify

Armenta contends "[t]he trial court erred by presuming a small child competent to testify without hearing from the child or determining her capacity at the time of the alleged abuse to receive an accurate impression of the abuse and testify truthfully about it later." We disagree.

A child's competency to testify at trial is determined within the framework of the general competency statute, RCW 5.60.050. State v. C.J., 148 Wn.2d 672, 682, 63 P.3d 765 (2003). The bar for competency is low. State v. Brousseau, 172

Wn.2d 331, 347, 259 P.3d 209 (2011). Children are presumed competent until proven otherwise by a preponderance of the evidence. Id. at 341. The burden of proving incompetency is on the party challenging the child witness. State v. S.J.W., 170 Wn.2d 92, 102, 239 P.3d 568 (2010). The challenging party must make a threshold showing of incompetency to require a pretrial hearing. Brousseau, 172 Wn.2d at 344-45. A bare assertion that a child witness is incompetent does not establish a basis for a competency hearing. Id. at 345.

In assessing whether a child is competent to testify, the court considers five factors, known as the Allen[2] factors:

> (1) an understanding of the obligation to speak the truth on the witness stand, (2) the mental capacity at the time of the occurrence to receive an accurate impression of the matter about which the witness is to testify, (3) a memory sufficient to retain an independent recollection of the occurrence, (4) the capacity to express in words the witness' memory of the occurrence, and (5) the capacity to understand simple questions about it.

C.J., 148 Wn.2d at 682. We review the trial court's determination of competency for abuse of discretion. State v. Woods, 154 Wn.2d 613, 617, 114 P.3d 1174 (2005).

Armenta claims "[i]t is an abuse of discretion in a delayed disclosure case for a trial court to decline to make findings of a child's competency both at the time of the trial and at the time of the event," citing In re Dependency of A.E.P., 135 Wn.2d 208, 956 P.2d 297 (1998). The court in A.E.P. stated that the Allen factors must be found before a child can be declared competent. 135 Wn.2d at

---

[2] State v. Allen, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967).

223. However, A.E.P was decided before the court clarified in S.J.W. that children are presumed competent to testify, and "[a] party challenging the competency of a child witness has the burden of rebutting that presumption with evidence indicating that the child is of unsound mind, intoxicated at the time of his production for examination, incapable of receiving just impressions of the facts, or incapable of relating facts truly." S.J.W., 170 Wn.2d at 102. The Allen factors "continue to be a guide when competency is challenged." Id.

Brousseau further underscored the presumption of competency by approving of the federal requirement "that a court find 'compelling reasons' before requiring a witness to testify at a pretrial competency hearing." 172 Wn.2d at 343. The court noted, "it makes little sense to require the court to examine a witness—at the expense of the witness and the court—where the party challenging competency lacks a demonstrated ability to prevail in this challenge." Id. Mere recitation of the Allen factors or "bare assertions" do not constitute a sufficient offer of proof of incompetency. Brousseau, 172 Wn.2d at 344-45.

Armenta contends that Brousseau is inapposite because that case did not involve delayed disclosure. Additionally, A.Z. was "possibly as young as two-and-a-half and no older than five years old" at the time of the alleged abuse, and according to Armenta, "[c]hildren of this age are rarely, if ever, found competent." But the case law is clear that children of any age are presumed competent, and it is the challenging party who bears the burden of making a threshold showing of incompetency in order to obtain a competency hearing. Id. at 343.

6

Moreover, as competency may be challenged at any time, "a party challenging competency on the ground that the witness was not subject to examination at a pretrial hearing has ample opportunity during trial to correct a preliminary error." Id. at 348. A child found competent at one point in time may become incompetent at trial, at which point a litigant may object, or the court may conduct a competency determination sua sponte. Id. Here, A.Z. testified at trial and was subject to cross-examination. Armenta could have renewed his challenge to her competency, or the trial court could have raised the issue sua sponte at any point during the trial, but neither did so.

With respect to A.Z.'s competence, Armenta argued below that the State had not provided evidence that A.Z. could satisfy the Allen factors:

> There's been no indication that she understands the obligation to speak the truth on the witness stand. There's an indication that she understands the difference between a truth and a lie, but there's no indication she has an understanding of her obligation to tell the truth when she's testifying in this courtroom, the mental capacity at the time of the occurrence to receive an accurate impression of the matter about which the witness is to testify. There has been absolutely no testimony by the State to indicate that she has the mental capacity at the time of the occurrence to receive an accurate impression.
> There's also been indication that when she was younger, about the time these alleged incidents occurred, she had an active imagination.
> There's also an indication from the mother that she didn't fully understand what she was talking about or what had happened. And that goes to the issue number three, a memory sufficient to retain an independent recollection of the occurrence. There's absolutely no evidence to indicate that she has a memory sufficient to retain an independent recollection, for the capacity to express with words, the witness's memory -- to express in words the witness's memory.

Thus, though Armenta argued the State failed to establish the Allen factors as needed for competency, it was *his* burden to make a showing of *incompetency* sufficient to require a hearing. Instead, his argument attempted to improperly shift the burden to the State to establish competence. Therefore, the trial court did not abuse its discretion by determining, without conducting a hearing, that Armenta had not overcome the presumption of competency and that A.Z. was competent.

II. Child Hearsay

Armenta also assigns error to the admission of the child hearsay statements. He argues the trial court "based its opinion on A.Z.'s maturity and demeanor at the time of the statements without giving any consideration of her maturity and demeanor at the time of the alleged incidents." We disagree that the trial court erred by admitting the statements.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. ER 801. Generally, hearsay evidence is not admissible unless subject to an exception under rule or statute. ER 802. RCW 9A.44.120(1)(a)(i) allows for admission of hearsay evidence "made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another."

When deciding whether to admit hearsay evidence, the court must conduct a hearing outside the presence of the jury and find "that the time, content, and circumstances of the statement provide sufficient indicia of reliability." RCW 9A.44.120(1)(b). Admissibility of child hearsay statements does

8

not require a showing of testimonial competency at the time of the out-of-court statements, including the ability to distinguish between truthful and false statements and an understanding of the obligation to tell the truth. C.J., 148 Wn.2d at 682-83. Rather, the inquiry focuses on whether the comments and circumstances surrounding the out-of-court statement indicate reliability. State v. Borboa, 157 Wn.2d 108, 120, 135 P.3d 469 (2006).

The Supreme Court has identified nine factors that courts should consider when assessing admissibility of child hearsay statements pursuant to RCW 9A.44.120, known as the Ryan[3] factors. Courts must consider

> (1) whether the child had an apparent motive to lie, (2) the child's general character, (3) whether more than one person heard the statements, (4) the spontaneity of the statements, (5) whether trustworthiness was suggested by the timing of the statement and the relationship between the child and the witness, (6) whether the statements contained express assertions of past fact, (7) whether the child's lack of knowledge could be established through cross-examination, (8) the remoteness of the possibility of the child's recollection being faulty, and (9) whether the surrounding circumstances suggested the child misrepresented the defendant's involvement.

Woods, 154 Wn.2d at 623. These factors must be "substantially met," and not every factor must be satisfied. Id. at 623-24. We review a trial court's decision on admissibility of child hearsay statements for abuse of discretion. Id. at 623.

_____

[3] State v. Ryan, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984).

After hearing testimony from Diana, Ana Karen, Dominguez-Cira, and Arnold, the trial court considered the Ryan factors and entered the following findings:

> 1. There is no evidence of a motive for A.Z. to lie;
> 2. The evidence shows that A.Z. is of good character which suggests trustworthiness. A.Z. had a lively imagination like most kids which is only encouraged;
> 3. A.Z. made statements to four people: Ana Karen, Eloisa Dominguez Cira, Diana Dominquez [sic], and Keri Arnold.
> 4. A.Z.'s statements were spontaneous as defined by the case law. Keri Arnold asked open ended questions that encouraged narrative responses. The only closed questions asked were clarifying questions;
> 5. The timing of A.Z.'s statements and her relationship with the witnesses suggest that her statements are trustworthy. All three relatives to whom A.Z. disclosed are close to [ ] her, but it is not surprising that a child is going to disclose to people to which she is closest;
> 6. The court did not consider factors 6 and 7.
> 7. The possibility of faulty recollection is remote. Despite inconsistencies between Ana Karen and Eloisa about where the incident occurred, there is no evidence that A.Z.'s recollection was faulty.
> 8. Based on the totality of the circumstances surrounding the making of A.Z.'s statements, there is no reason to believe A.Z. misrepresented the defendant's involvement.

As a result, the court admitted A.Z.'s hearsay statements.

Rather than challenge any of the court's findings, Armenta contends, "A person's competency at the time of the incident is an integral part of the Ryan analysis." Armenta bases this claim on the statement in State v. Karpenski, 94 Wn. App. 80, 119, 971 P.2d 553 (1999), abrogated by C.J., 148 Wn.2d 672, that "a hearsay statement cannot be reliable enough for admission unless the declarant possessed the qualifications of a witness at the time the statement was

made." But Karpenski does not support Armenta's contention, as it discussed witness competency at the time the statements were made rather than at the time of the incident. 94 Wn. App. at 119.[4] Armenta has not provided decisional authority that considers a child's competency at the time of the alleged incident when determining the admissibility of child hearsay. The trial court properly considered the hearsay testimony in light of the Ryan factors. Armenta has failed to demonstrate any error as to the court's findings and analysis related to the Ryan factors.

As an alternative argument, Armenta asserts that even if the hearsay statements satisfy the Ryan requirements, the statements were inadmissible because they were not corroborated as required under RCW 9A.44.120(1)(c)(iii) when the child is unavailable as a witness at trial. Although A.Z. testified at the trial, Armenta claims she was unavailable because she was incompetent to testify. As discussed above, the trial court did not abuse its discretion in finding A.Z. competent to testify. Corroboration was not needed.

Affirmed.

---

[4] Moreover, the Washington Supreme Court has since determined the prerequisites in the child hearsay statute "do not include any requirement that a declarant must be shown to have possessed testimonial competency at the time of the out of court statement." C.J., 148 Wn.2d at 683.

_Chung, J._

WE CONCUR:

_Feldman, J._      _Bruman, J_