# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON | ) | No. 72523-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| TANNER J.,[†] | ) | |
| DOB: 10/17/99, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 16, 2015 |

TRICKEY, J. — Tanner J. appeals his juvenile offender adjudication of child molestation in the first degree. He claims that the court abused its discretion and violated his right to due process by admitting unreliable hearsay evidence. Additionally, Tanner claims that, even with the hearsay evidence, the State did not prove his guilt beyond a reasonable doubt. We hold that it was not an abuse of discretion to admit the hearsay statements, that substantial evidence supports the findings of fact, and that the findings of fact support the conclusions of law. We affirm the trial court's adjudication, but remand to address a clerical error in the conclusions of law.

## FACTS

For approximately four months in the beginning of 2013, Elizabeth Dellinger-Frye lived with Van J. in Concrete, WA. Living with them were Van's son Tanner J. and Dellinger-Frye's son M.A., the victim in this case. Tanner was 13 years old, and M.A. turned 6, while they lived together.

---

[†]The trial court's case caption has been modified to reflect the "State of Washington" as the responding party, and the appellant's last name has been replaced with the initial "J."

In October 2013, M.A. and his family moved in with Randi Cate and her family in Concrete, Washington. M.A. shared a bedroom with two of Cate's sons, Andrew and Logan. Andrew is about M.A.'s age, and Logan is a little younger.

One day in November 2013, Logan told Cate that Andrew and M.A. were "pulling down their pants and kissing each others' [sic] butts."[1] The boys had played similarly inappropriate games for a couple of weeks before this incident. This time, Cate called Dellinger-Frye, who was not at home. Dellinger-Frye returned, and the two mothers talked to M.A. and Andrew about this kind of playing. The women asked the boys where they had learned the game. Initially, M.A. said that Andrew had taught him that behavior. When Andrew said he had learned it from M.A., M.A. told them that Tanner had done it to him. M.A. said that Tanner would have him "pull down his pants and sit on top of him with his pants down."[2] At that point, Cate and Dellinger-Frye stopped questioning M.A. and called the police.

As part of the police investigation, Officer Deborah Ridgeway interviewed M.A. Officer Ridgeway is a child interview specialist. She elicited more details from M.A. about his interactions with Tanner. M.A. described sitting unclothed with Tanner's penis in his butt, or with his butt on Tanner's penis, and Tanner's hands on M.A.'s penis. M.A. also said that Tanner told him to "suck on" Tanner's penis.

The court determined M.A.'s statements to Officer Ridgeway, Cate, and Dellinger-Frye were reliable as child's hearsay per RCW 9A.44.120. The court found that M.A. was competent to testify.

---

[1] Report of Proceedings (RP) (Sep. 8, 2014) at 59.
[2] RP (Sep. 8, 2014) at 63.

M.A. testified at trial that he heard about the "sexing game" from Tanner.[3] However, he denied having had any sexual contact with Tanner, playing inappropriately with Andrew, and telling Cate, Dellinger-Frye, and Officer Ridgeway about the inappropriate contact with Tanner.

Cate, Dellinger-Frye, and Officer Ridgeway all testified. Each of them described their conversations with M.A. about Tanner and inappropriate touching.

The court found Tanner guilty of child molestation in the first degree. Tanner appeals.

## ANALYSIS

### Child Hearsay

Tanner argues that his right to due process was violated by the admission of unreliable hearsay evidence. Specifically, he claims that the trial court abused its discretion when it determined that M.A.'s statements to Cate and Dellinger-Frye, satisfied the nine Ryan factors. State v. Ryan, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984). We disagree.

In cases of sexual or physical child abuse, courts will admit hearsay testimony from declarants who are under 10 years old if the hearsay meets certain criteria. RCW 9A.44.120. Those criteria include that the statements must have "sufficient indicia of reliability" and either that the child testifies, or, if the child is unavailable, that there be "corroborative evidence of the act." RCW 9A.44.120. Courts look to nine factors to determine reliability:

1. Whether the declarant, at the time of making the statement, had an apparent motive to lie;
2. Whether the declarant's general character suggests

---

[3] RP (Sep. 8, 2014) at 31-32.

trustworthiness;

3. Whether more than one person heard the statement;
4. The spontaneity of the statement;
5. Whether trustworthiness is suggested from the timing of the statement and the relationship between the declarant and the witness;
6. Whether the statement contains express assertions of past facts;
7. Whether the declarant's lack of knowledge could be established by cross-examination;
8. The remoteness of the possibility that the declarant's recollection is faulty; and
9. Whether the surrounding circumstances suggest that the declarant misrepresented the defendant's involvement.

State v. C.J., 148 Wn.2d 672, 683-84, 63 P.3d 765 (2003). Courts have determined that statements are spontaneous when the child is responding to questioning but "the details of the event and the identity of the defendant were not suggested." State v. Madison, 53 Wn. App. 754, 759, 770 P.2d 662, review denied, 113 Wn.2d 1002, 777 P.2d 1050 (1989). "Not every factor need be satisfied; it is enough that the factors are 'substantially met.'" State v. Woods, 154 Wn.2d 613, 623-24, 114 P.3d 1174 (2005) (quoting State v. Swan, 114 Wn.2d 613, 652, 790 P.2d 610 (1990)).

We review a trial court's decision to admit child hearsay for an abuse of discretion. State v. Borboa, 157 Wn.2d 108, 121, 135 P.3d 469 (2006). A court abuses its discretion if its "decision is manifestly unreasonable or is based on untenable reasons or grounds." C.J., 148 Wn.2d at 686.

Here, the record reflects that the court considered seven of the nine Ryan factors.

On the first factor, the court noted that although M.A. might have believed

4

he was in trouble, he had no "motive to lie about Tanner per se."[4] The court reasoned that M.A. and Tanner had not lived together for six months and M.A. would have no reason to attempt "to get Tanner in trouble at that moment in time."[5]

For the second factor, the court found there was no reason to doubt M.A.'s character, M.A.'s truthfulness was "pretty ordinary" for a 6- or 7-year-old, and M.A. was not known for "spin[ning] wild tales."[6] Likewise, the third factor was met because Cate and Dellinger-Frye heard M.A.'s statements at the same time and related them in consistent ways.

Addressing the fourth factor next, the court concluded that M.A.'s accusations against Tanner were "relatively spontaneous."[7] The court noted that, although M.A.'s disclosures were in response to questions about sexual conduct, Cate and Dellinger-Frye asked him if he had seen this behavior on television, did not include Tanner's name, and the questions were not leading or suggestive.

Moving to the fifth factor, the court commented that the timing of M.A.'s statements did not add or detract from their reliability. But, the fact that M.A. first made the disclosures to trusted figures, his mother and caretaker, "enhance[d] the reliability of the statements."[8]

The court evaluated the eighth factor next, and determined that the chance that M.A.'s recollections were "faded" or "distorted" was remote because the disclosure occurred only six months after the alleged incidents.[9]

---

[4] RP (Aug. 1, 2014) at 93.
[5] RP (Aug. 1, 2014) at 93.
[6] RP (Aug. 1, 2014) at 94.
[7] RP (Aug. 1, 2014) at 94.
[8] RP (Aug. 1, 2014) at 95.
[9] RP (Aug. 1, 2014) at 95-96.

Finally, the court considered the ninth factor, and observed that there was nothing about the surrounding circumstances to suggest that M.A. would "misrepresent Tanner's involvement."[10]

The court did not discuss whether the statements included statements of past facts, or whether cross-examination would establish the declarant's knowledge, the sixth and seventh factors. But, our Supreme Court has made it clear that, when looking at child hearsay statements about sexual abuse, the inclusion of statements about past facts do not have a significant impact on the reliability of the statements. Swan, 114 Wn.2d at 650-51. Further, because the parties knew M.A. intended to testify, it was appropriate for the court not to consider factor seven. See Woods, 154 Wn.2d at 624.

In short, the trial court properly considered the Ryan factors in making its reliability determination. The factors identified by the court indicate that the statements were reliable. Additionally, M.A. testified at trial, which satisfies the other statutory requirement for admission of this hearsay evidence. The trial court did not abuse its discretion when it admitted at trial M.A.'s statements to Cate and Dellinger-Frye.

Tanner's primary challenge to this reliability determination is that M.A., aware of the hostility between M.A.'s mother, Tanner's father, and Tanner, accused Tanner in order to escape trouble. This would give M.A. a motive to lie, indicate that M.A.'s relationships with Cate and Dellinger-Frye weighed against reliability, and reduce the spontaneity of the comments. The trial court declined to

---

[10] RP (Aug. 1, 2014) at 96.

make that inference, and we cannot say that decision was unreasonable

Tanner also argues that M.A.'s character weighs against reliability. He asserts that M.A.'s "developmental history and unconfirmed current diagnosis [of autism]" impacts whether his character suggests trustworthiness.[11] But Tanner draws no connection between M.A.'s background and M.A.'s trustworthiness. Further, even if this factor weighed against reliability, the factors collectively would still be substantially met.

Lastly, Tanner contends that the trial court's decision to disregard M.A.'s live testimony "undercuts the reliability of [M.A.'s] unsworn statements."[12] Given that the court made its determination of reliability *before* M.A. testified at trial, M.A.'s testimony had no impact on the court's determination. Nothing about the court's decision to credit M.A.'s hearsay statements over his in-court testimony required the court to revisit its determination that M.A.'s statements were reliable. Thus, this argument is not persuasive.

### Sufficiency of the Evidence

Tanner contends that the State did not prove beyond a reasonable doubt that he committed child molestation in the first degree. Specifically, he claims that the court's credibility determination was illogical and that there was not substantial evidence to support four of the court's findings of fact. We disagree.

"Due process requires the State to prove every element of a crime beyond a reasonable doubt." State v. Deer, 175 Wn.2d 725, 731, 287 P.3d 539 (2012).

> A person is guilty of child molestation in the first degree when the person has, or knowingly causes another person under the age of

---

[11] Appellant's Reply Br. at 11.
[12] Appellant's Br. at 21.

eighteen to have, sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

RCW 9A.44.083. The statute defines "sexual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2).

We will sustain a conviction when, "after viewing the evidence [in the light] most favorable to the State," we determine that "any rational trier of fact could have found the essential elements of [the crime] beyond a reasonable doubt." State v. Green, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980) (emphasis omitted). A claim of insufficiency admits the truth of the State's evidence and all the reasonable inferences that can be drawn from it. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

First, we determine if there is substantial evidence to support the trial court's findings of fact. State v. B.J.S., 140 Wn. App. 91, 97, 169 P.3d 34 (2007). Second, we determine if the findings of fact support the conclusions of law. B.J.S., 140 Wn. App. at 97.

We "must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Fiser, 99 Wn. App. 714, 719, 995 P.2d 107 (2000). Unchallenged findings of fact are verities on appeal. B.J.S., 140 Wn. App. at 97. "We review conclusions of law de novo." B.J.S., 140 Wn. App. at 97.

Here, Tanner first challenges the determination that M.A.'s out-of-court statements were more believable than his in-court testimony. This is implicitly a

challenge to finding of fact 11, which describes M.A.'s demeanor during his testimony. This also represents a challenge to the many findings of fact that are supported by hearsay testimony, and thus, rely on the court's initial determination. The court, as it explained in its oral ruling, believed that M.A. was trying to finish his testimony as quickly as possible. Therefore, the court credited M.A.'s other, fairly consistent statements. That was not an unreasonable conclusion for the trial court to make. We will not disturb the findings of fact that depend on that conclusion.

Tanner also alleges that findings of fact 4, 5, 12, and 19 are not supported by the evidence. Findings of fact 4, 5, and 12 describe circumstances surrounding M.A.'s initial disclosures, and his feelings about Tanner. They are not necessary to support Tanner's adjudication. In any event, they are supported by substantial evidence in the record. Cate's testimony supports findings of fact 4 and 5.[13] M.A.'s own testimony supports finding of fact 12.

In finding of fact 19, the trial court found:

> The contact that occurred was done for the purposes of [Tanner's] sexual gratification and the sexual contact involved [Tanner] instructing M.A. to pull down his pants and underwear and climb on top of [Tanner] while [Tanner] had the front of his pants down and had M.A. sit with [Tanner's] penis in [M.A.'s] butt.[14]

Tanner objects to the finding that Tanner's penis was "in [M.A.'s] butt" because no one ever had M.A. explain what that meant. Officer Ridgeway testified that M.A. first said his "butt was on [Tanner's] pee-pee" and then said that Tanner's penis

---

[13] Tanner objects that Cate's testimony was based on hearsay, not her personal observations. Tanner did not object to this hearsay within hearsay at trial.
[14] Clerk's Papers (CP) at 237.

was "[i]n [M.A.'s] butt."[15] This testimony supports finding of fact 19.

Finding of fact 19 establishes that the contact between Tanner and M.A. was sexual contact, and explains what that contact was.

Tanner does not challenge finding of fact 18, which establishes that Tanner had contact with unclothed intimate parts of M.A.'s body, specifically that Tanner's hands were on M.A.'s penis, and that neither of the boys were clothed when M.A. was sitting on Tanner's lap. Tanner also does not challenge finding of fact 20, which establishes M.A.'s and Tanner's birthdays, or finding of fact 21, which establishes that M.A. and Tanner are not married. Thus, these findings are verities on appeal.

Together with finding of fact 19, these findings support the court's oral conclusion that Tanner's conduct satisfied the elements of child molestation in the first degree: sexual contact occurred between M.A. and Tanner, that M.A. was under 12 years of age, at least 36 months younger than Tanner, and that the two were not married.

These challenged findings, together with the unchallenged findings, support the trial court's verdict that Tanner is guilty of child molestation in the first degree. Substantial evidence supports the adjudication.

We affirm the trial court's adjudication but remand to the trial court to correct an apparent clerical error in conclusion of law 3. An error is clerical if the judgment does not "embod[y] the trial court's intention." Marchel v. Bunger, 13 Wn. App. 81, 84, 533 P.2d 406 (1975). By statute, the victim and perpetrator must be at least

---

[15] RP (Sep. 8, 2014) at 167-68.

36 months apart. RCW 9A.44.083(1). The trial court's third conclusion of law says, "M.A. was and is at least twenty four months younger than the [r]espondent."[16]

This is an error, but it is a technical one, not a substantive, judicial one. The court's oral ruling reflected the correct statutory age difference. Similarly, finding of fact 20 establishes that Tanner is more than seven years older than M.A., a far greater age difference than the statute requires. Tanner's stipulation to his own birthday and Dellinger-Frye's testimony regarding M.A.'s birthday support that finding.

We affirm and remand to the trial court to address the error.

Trickey, J

WE CONCUR:



---

[16] CP at 238.