[No. 5515-9-III.  Division Three.  July 26, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID E. BRADBURY, *Appellant.*

---

*James Parkins* and *Parkins & Ryan,* for appellant (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney,* and *Allen M. Gauper, Deputy,* for respondent.

McInturff, J.—David Bradbury appeals from a jury verdict finding him guilty of delivery of a controlled substance (marijuana) while armed with a deadly weapon.

The incident leading to the arrest and conviction of Mr. Bradbury occurred October 7, 1981, at the Carmino Porco residence. While the house was under surveillance, an undercover officer, Richard Jennings, was completing nego-

tiations at the residence for the purchase of a substantial quantity of marijuana. This transaction culminated a series of events beginning in September 1981, when Officer Jennings proposed to Mr. Porco the purchase of $26,000 worth of marijuana on behalf of an imaginary friend in Canada. Mr. Porco had been unable to put the deal together until October 7. Mr. Jennings was to be present at the Porco residence in the late afternoon when the substance was to be delivered to the house. The marijuana was to be inspected by Mr. Jennings and, if approved, the money would have been delivered.

On the afternoon in question, Officer Jennings testified Mr. Porco told him, "That's the man we are looking for" when they saw David Bradbury arrive at the house, driving a Cadillac automobile. Mr. Jennings then hid himself behind a door as prearranged, but was not able to observe anyone enter the residence, although after someone entered he heard something heavy drop on the floor. He then heard someone go into the bathroom just before Mr. Porco allowed him to inspect the drugs. Mr. Jennings observed a brown suitcase containing 36 pounds of marijuana for which Mr. Porco demanded $17,000. Officer Jennings left the residence to retrieve the money from his car and to give the prearranged signal for waiting officers to enter the house.

Mr. Bradbury contends he had made an appointment to meet Mr. Porco's son, Joe, at his father's residence to discuss the sale of a 3–wheel motorcycle. Mr. Bradbury arrived to find Joe not there and not certain to arrive within the hour. He asked to use the bathroom and was in the bathroom at the time the police officers executed the search warrant.

During the defendant's trial, the prosecution called Carmino Porco as a witness outside the presence of the jury. On advice of his counsel, Mr. Porco claimed the Fifth Amendment privilege when questioned regarding this episode. The court also confirmed Mr. Porco had entered a plea of guilty to a charge involving this matter but had

later moved to withdraw the plea, a motion which was still pending. The court accepted Mr. Porco's claim of privilege. Mr. Porco's counsel then advised the court defense counsel also planned to call Mr. Porco as a defense witness and that Mr. Porco would again claim the Fifth Amendment. The court, considering the convenience of Mr. Porco and his attorney, instructed the jury to return and called Mr. Porco to the stand to be questioned by defense counsel. He claimed the privilege and was subsequently excused.

Mr. Bradbury's counsel on appeal[1] claims it was prejudicial error to call Mr. Porco to the stand in front of the jury knowing he would claim the privilege and that such error constituted ineffective assistance of counsel. The State argues the decision to call Mr. Porco was a trial tactic.

In *Strickland v. Washington,* __ U.S. __, 80 L. Ed. 2d 674, 104 S. Ct. 2052, 2064–65 (1984), the United States Supreme Court considered the issue of ineffective assistance of counsel and adopted the following rule:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
> . . .
> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
> . . .

---

[1] During the trial Mr. Bradbury was represented by another attorney.

. . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. See *United States* v. *Decoster,* 624 F.2d [196 (D.C. Cir. 1976)], at 208. Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant's cause. Moreover, the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.

The Court further states that reviewing courts must grant a strong presumption that defendants have received effective assistance by their attorney.

Our court has come to the same conclusion in *State v. Ermert,* 94 Wn.2d 839, 849, 621 P.2d 121 (1980). The standard for determining ineffective assistance of counsel is "'"[a]fter considering the *entire record,* can it be said that the accused was afforded an *effective representation* and a *fair* and *impartial* trial?"'" *State v. Myers,* 86 Wn.2d 419, 424, 545 P.2d 538 (1976) (quoting *State v. Johnson,* 74 Wn.2d 567, 570, 445 P.2d 726 (1968), quoting *State v. Thomas,* 71 Wn.2d 470, 471, 429 P.2d 231 (1967)).

With respect to the first requirement announced in *Strickland* (defendant's allegation his trial counsel erred in calling Carmino Porco to the stand knowing he would claim the Fifth Amendment privilege), it is well established in this state that prejudicial error occurs when the State calls a defendant and forces him to claim the privilege against self–incrimination. *State v. Tanner,* 54 Wn.2d 535, 537, 341 P.2d 869, 871 (1959). There is language in *State v. Smith,* 74 Wn.2d 744, 758–59, 446 P.2d 571 (1968), *vacated in part,* 408 U.S. 934 (1972), which would indicate a defendant should not call a codefendant knowing he will claim the

privilege:

> There is no reason for distinguishing these cases on the basis that the party calling the witness was the government. The fundamental point is that the exercise of the privilege is not evidence to be used in the case *by any party.* . . .
>
> . . .
>
> If the claiming of the privilege is not evidence which the prosecutor can use, there is no reason why it should be deemed to acquire probative value simply because a codefendant rather than the state seeks to utilize it.

Assuming, arguendo, the public defender's decision to call Mr. Porco was error, the next question to be addressed is the second *Strickland* requirement that Mr. Bradbury's right to a fair trial was severely prejudiced.

█ It cannot be said after review of the record defendant was denied a fair trial. Defendant himself has not advanced any offer of proof of prejudice other than to conclude his counsel's actions were "inherently prejudicial" based on *People v. Poma,* 96 Mich. App. 726, 294 N.W.2d 221 (1980), *State v. Allen,* 224 N.W.2d 237 (Iowa 1974), and *Namet v. United States,* 373 U.S. 179, 10 L. Ed. 2d 278, 83 S. Ct. 1151 (1963), all of which are distinguishable because they involve prosecutorial, not defense witnesses. Further, defendant has failed to overcome the presumption enunciated in *Strickland* that his counsel's tactics under the circumstances were not unreasonable and could be considered sound trial strategy.

In *State v. Piche,* 71 Wn.2d 583, 590, 430 P.2d 522 (1967), *cert. denied,* 390 U.S. 912 (1968), the court stated:

> To assure the defendant of counsel's best efforts then, the law must afford the attorney a wide latitude and flexibility in his choice of trial psychology and tactics. If counsel is to be stultified at trial by a post trial scrutiny of the myriad choices he must make in the course of a trial: whether to examine on a fact, whether and how much to cross–examine, whether to put some witnesses on the stand and leave others off—indeed, in some instances, whether to interview some witnesses before trial or leave them alone—he will lose the very freedom

of action so essential to a skillful representation of the accused.

. . .

. . . For many reasons, therefore, the choice of trial tactics, the action to be taken or avoided, and the methodology to be employed must rest in the attorney's judgment.

Defense counsel offered a sufficient reason for calling Mr. Porco to the stand: to enable the jury to understand why Mr. Porco would not testify. Otherwise, the jury could conclude the defendant was withholding evidence. To him, this reason outweighed any prejudicial effect of hearing Mr. Porco claim the Fifth Amendment in front of the jury. The decision to call Mr. Porco was trial strategy from which no prejudicial error resulted to the defendant. Because of our holding, we do not consider Mr. Bradbury's arguments with respect to burden of proof necessary to find harmful constitutional error.

Mr. Bradbury next argues statements made by Mr. Porco to Officer Jennings should not have been admitted because they constituted hearsay and there was no "circumstantial probability" of their trustworthiness, citing *Raborn v. Hayton,* 34 Wn.2d 105, 208 P.2d 133 (1949). The State argues they were admissible under either ER 803(a)(3) or ER 804(b)(3).[2] Because we find them admissible under ER 804(b)(3), we do not consider their admissibility under

---

[2]ER 804 provides:

"(a) **Definition of Unavailability.** 'Unavailability as a witness' includes situations in which the declarant:

"(1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or . . .

"(b) **Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: . . .

"(3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

803(a)(3). The statements referred to by the defendant as inadmissible hearsay are conversations between Officer Jennings and Mr. Porco about the terms and arrangements for the sale of marijuana. Included in those statements are references by Mr. Porco to a man named "Dave" who was to deliver the drugs.

■ Admissibility under ER 804(b)(3), a statement made against penal interest by an unavailable declarant, is considered in *State v. Valladares*, 99 Wn.2d 663, 668, 664 P.2d 508 (1983):

> In *State v. Parris*, 98 Wn.2d 140, 654 P.2d 77 (1982), this court aligned itself with the weight of federal case authority holding that inculpatory statements are admissible under the same standard ER 804(b)(3) sets for exculpatory statements.
>
> In adopting the ER 804(b)(3) standard three basic prerequisites were delineated. First, the declarant must be unavailable despite good faith efforts to locate him or her. Second, the declarant's statement must so far tend to subject him or her to criminal liability that a reasonable person would not have made the statement unless he believed it to be true. Finally, the statement must be accompanied by corroborating circumstances indicating its trustworthiness. *United States v. Sarmiento–Perez*, 633 F.2d 1092, 1098 (5th Cir. 1981).

(Citations omitted.) It is undisputed the first two prerequisites of unavailability and criminal liability have been met. But defendant argues the third requirement of trustworthiness is missing because he was denied a prior opportunity to cross–examine the witness. The *Valladares* court, in reviewing the trustworthiness of statements made by an informant regarding drug sales, held the opportunity to cross–examine was not necessary to fulfill the requirements of the confrontation clause of the Sixth Amendment since the defendant himself provided sufficient corroborating evidence of trustworthiness. Five nonexclusive guidelines for determining trustworthiness are found in *State v.*

*Parris,* 98 Wn.2d 140, 146, 654 P.2d 77 (1982) (citing *United States v. Alvarez,* 584 F.2d 694 (5th Cir. 1978)): (1) whether there is an apparent motive to lie, (2) the general character of the declarant, (3) whether more than one person heard the statements, (4) whether the statements were made spontaneously, and (5) the timing of the declaration and the relationship between the declarant and the witness.

Turning to the statements in question, the declarant, Porco, knew or should have known he was engaged in criminal conduct and that his statements could be used in court against his penal interest. His statements were in furtherance of the crime of delivery of a controlled substance and were relevant to prove a delivery had been made and by whom it was made. He was satisfied he was dealing with a bona fide purchaser so there was no apparent motive for him to lie. The statements were made spontaneously in order to complete a transaction in which he had a vested interest and into which he had voluntarily entered. The surrounding circumstances thus support the trustworthiness of the statements.

Mr. Bradbury has attempted to bifurcate the events leading to his arrest into two different transactions, the first, an unsuccessful drug delivery on October 6, and the second, a successfully completed drug sale on October 7. He cites *State v. Miles,* 73 Wn.2d 67, 436 P.2d 198 (1968), in which testimony regarding a robbery other than the one on trial was held to be prejudicial evidence. Such is not the case here. The October 7 sale was the final act in a series of events that started in late summer. The *Miles* case is, therefore, not persuasive. We find there was no error in admitting the statements under ER 804(b)(3).

Defendant submits that the cumulative effect of repeated prejudicial error denied him a fair trial. Since no prejudicial error was found there can be no application of the cumulative error doctrine.

The judgment of the Superior Court is affirmed.

GREEN, A.C.J., and THOMPSON, J., concur.

Reconsideration denied August 22, 1984.

Review denied by Supreme Court December 7, 1984.