[Nos. 6821–4–II; 7658–6–II.   Division Two.   January 7, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. LEANDRO R. SARDINIA, *Appellant.*

*In the Matter of the Personal Restraint of*
LEANDRO R. SARDINIA, *Petitioner.*

534

*James L. Reese III,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Gregg E. Johnsen, Deputy,* for respondent.

ALEXANDER, J.—Leandro Sardinia appeals from his conviction by jury verdict of indecent liberties and first degree statutory rape. We affirm.

In April 1982, Children's Protective Services (CPS) initiated an investigation into the alleged sexual molestation of

9–year–old Jean Doe.[1] At the conclusion of the investigation, appellant, Sardinia, was charged with indecent liberties and first degree statutory rape.

Prior to trial the court held a hearing outside the presence of the jury to assess the competency of the child victim. The trial court found Jean competent to testify.

Jean then testified before the jury that she lived with her adopted mother, Judith Doe; Judith's other four children; Judith's boyfriend, Sardinia; and Sardinia's adopted son. Jean also testified that on several occasions when she was between the ages of 6 and 9, Sardinia made sexual contact with her and engaged her in sexual intercourse. The details of these separate encounters, as described by the child, are extremely sordid and need not be set forth exactly. It is sufficient to say that, if Jean's testimony was believed, it clearly established that the offenses of indecent liberties and first degree statutory rape were committed upon her. Further, her mother, Judith, testified that on one occasion when Jean was 7 years old, Judith walked into the kitchen and found Sardinia exposing himself to Jean.

Other than Jean and her mother, the other witnesses called by the prosecution were Jean's teacher and a CPS worker. The defense called only Sardinia to the stand.

Sardinia was convicted of both charges and was sentenced to concurrent terms of 10 years for indecent liberties and 20 years for statutory rape.

Sardinia appealed his conviction and thereafter filed a personal restraint petition alleging ineffective assistance of counsel at trial. This court consolidated the appeal and personal restraint petition and issued an order remanding the case back to the trial court to enter findings of fact on the issue of whether Sardinia received effective representation by counsel. On remand, the trial court heard the testimony of several witnesses and based on this testimony, made findings of fact.

---

[1]We have used a fictitious surname throughout this opinion for both the child victim and her mother.

Sardinia first asserts that the trial court erred in finding Jean competent to testify. We find no merit in this contention.

In the hearing to determine competency, Jean, who was 4 months away from her 10th birthday,[2] was able to tell the court her birthday, her grade in school, who her teachers were and how she did in school. Jean said she knew the difference between telling the truth and telling a lie. She also said that she would get in trouble with her mother if she told a lie. The court found Jean competent to testify after stating that Jean was quite articulate for her age and that she evidenced knowledge of the difference between telling the truth and telling a lie.

█ The appropriate test to determine child competency and the one applied by the trial court, was set out in *State v. Allen*, 70 Wn.2d 690, 424 P.2d 1021 (1967). The test requires that the child demonstrate the following:

> (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.

*Allen*, 70 Wn.2d at 692.

The determination of the witness' ability to meet the above test requirements rests primarily with the trial judge. The trial court's determination will not be disturbed on appeal absent proof of a manifest abuse of discretion. *Allen*, 70 Wn.2d at 692.

Jean's testimony at the competency hearing clearly indi-

---

[2]RCW 5.60.050 provides, in part:

"Who are incompetent. The following persons shall not be competent to testify:

". . .

"(2) Children under ten years of age, who appear incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly."

cates that requirements (1), (4), and (5) have been met. Sardinia asserts, however, that her testimony is not sufficient to satisfy requirements (2) and (3). We disagree.

The child's testimony revealed that she had an adequate memory to recall past events. She said that she knew who her schoolteachers were and what her performance had been in school. From this testimony the trial judge was justified in inferring that she had sufficient memory to permit her to retain an independent recollection of the occurrences leading to the events described in this case.

Although Jean's testimony does not as clearly reveal her mental capacity at the time of the occurrence, requirement (2), her overall demeanor and the manner of her answers were sufficient to permit the trial court to infer this aspect of the *Allen* test. This seems particularly true considering that such a judgment is always highly subjective. Certainly there was nothing revealed by her testimony which would logically suggest a contrary conclusion. A trial court must necessarily be clothed with wide discretion in these matters. The competency of a youthful witness is not easily reflected in a written record. *Allen*, 70 Wn.2d at 692. Because the trial judge witnessed the child's manner and heard her answers, he is in a better position than we are to make the determination of her competency. There has been no showing of a manifest abuse of discretion on this issue.

The second issue raised on appeal is whether Sardinia was prejudiced by being charged with separate counts of indecent liberties and statutory rape. Sardinia asserts that the trial court erred in giving jury instructions that indecent liberties is a lesser included offense to first degree statutory rape, in light of the fact that he was charged with both crimes. Frankly, we have experienced some difficulty understanding Sardinia's assignment of error because his brief discusses insufficiency of the evidence and instructional error interchangeably. We believe, however, that Sardinia is asserting that because he was charged with indecent liberties in count 1 and first degree statutory rape in count 2, the trial court's instruction as to indecent liber-

ties as a lesser included offense (which is admittedly identical to that given for count 1) resulted in the wrongful conviction of Sardinia for both first degree statutory rape and indecent liberties as a lesser included offense of the statutory rape charge.

Sardinia's contention is incorrect. An examination of the verdicts reveal that Sardinia was found guilty of first degree statutory rape, as charged in count 2 of the information, and indecent liberties as charged in count 1. In its determinations, the jury never reached consideration of any lesser included offense to first degree statutory rape because this would have occurred only if Sardinia had been found not guilty of first degree statutory rape (count 2).

Contrary to Sardinia's assertion, there is sufficient evidence to convict him of both crimes. In order to convict a defendant of indecent liberties the finder of fact must conclude that a defendant had sexual contact with the victim. RCW 9A.44.100. A conviction for first degree statutory rape requires a finding that the defendant engaged in sexual intercourse with the victim. RCW 9A.44.070. "Sexual intercourse" includes any penetration of the vagina or any oral sex. RCW 9A.44.010.

As stated above, there is ample evidence from which a jury could conclude that separate acts of Sardinia led to his conviction on charges of indecent liberties and first degree statutory rape.

In his personal restraint petition Sardinia raises the issue of alleged ineffective assistance of counsel. The Washington State and United States Constitutions guarantee a criminal defendant the right to effective assistance of counsel. *See* U.S. Const. amend. 14, § 1; Const. art. 1, § 22. The test in Washington for determining whether a defendant was denied the effective assistance of counsel has been: "[a]fter considering the *entire record,* can it be said that the accused was afforded an *effective representation* and a *fair* and *impartial* trial?" *State v. Thomas,* 71 Wn.2d 470, 471, 429 P.2d 231 (1967).

The United States Supreme Court had stated only that

courts must make "effective" appointments of counsel. *Powell v. Alabama,* 287 U.S. 45, 77 L. Ed. 158, 53 S. Ct. 55, 84 A.L.R. 527 (1932). Until recently, no explicit guidelines were set by the Court to determine whether counsel is "effective," and each state was left the task of developing its own standards. *State v. Johnson,* 29 Wn. App. 807, 813–14, 631 P.2d 413 (1981).

However, in May 1984, the United States Supreme Court did offer guidance on the issue. In *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), the Court set out a 2-part test for determining whether a defendant was denied effective assistance of counsel. First, the defendant must show that counsel's performance was deficient. *Strickland,* 466 U.S. at 687–88. This showing is made by demonstrating that "counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. Second, the defendant must show that counsel's deficient performance prejudiced the defendant. This showing is made when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Court specified that a "reasonable probability is a probability sufficient to undermine confidence in the outcome." Further, as an overall consideration, there is a strong presumption of adequate assistance of counsel. *Strickland,* 466 U.S. at 694.

The Court emphasized that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686. The Court also provided the framework within which the 2-part test is to function:

> No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal

defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant's cause. Moreover, the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.

(Citations omitted.) *Strickland*, 466 U.S. at 688–89.

We believe that the *Strickland* test varies somewhat from the Washington State test.[3] The Washington test consists of two parts: effective representation and fair and impartial trial (*i.e.*, no prejudicial effect to the defendant because of the counsel's deficiency). *See State v. Johnson, supra*. Although the *Strickland* test also focuses on these two requirements, *Strickland* is far more specific as to the meaning of "effective" and "prejudicial." "Effective" requires applying an "objective standard of reasonableness", *Strickland*, 466 U.S. at 688, and "prejudicial" requires a "but for" test and a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The *Strickland* test governs cases in which claims of ineffective assistance of counsel are made under the Sixth Amendment. Because the Sixth Amendment, as construed by the *Strickland* Court, is more protective of rights in this area than the provisions of article 1, section 22 of the Washington State Constitution, we hold that the *Strickland* test should be applied by Washington courts to issues of ineffective assistance of counsel.

Because Sardinia's trial occurred in 1982, we are con-

---

[3]The *Strickland* analysis was discussed in conjunction with the Washington State test in *State v. Bradbury*, 38 Wn. App. 367, 685 P.2d 623 (1984). The court in *Bradbury* applied the *Strickland* test without engaging in any detailed analysis of the *Strickland* test and its interaction with the Washington State test. We believe that a more detailed discussion of the test and its requirements will facilitate the tests' application.

fronted with the question of whether the *Strickland* analysis should be applied retroactively. No court has decided this specific question. The appropriate test for determining whether a constitutional rule of criminal procedure is to be applied retroactively focuses on the following criteria:

> (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

*Stovall v. Denno,* 388 U.S. 293, 297, 18 L. Ed. 2d 1199, 1203, 87 S. Ct. 1967 (1967). The Washington Supreme Court adopted this standard in *In re Sauve,* 103 Wn.2d 322, 328, 692 P.2d 818 (1985).

Application of these standards to *Strickland* convinces us that the *Strickland* decision should be applied retroactively. First, the *Strickland* test exists to ensure that defendants receive a fair trial. Second, reliance on the pre–*Strickland* ineffective assistance of counsel standard would not cause a lawyer to perform in a different manner than he would post–*Strickland.* Finally, retroactive application of *Strickland* will not have any detrimental effect on the administration of justice. We hold, therefore, that the analysis set out by the Supreme Court in *Strickland* is applicable to the present case.

Sardinia argues that he was denied effective assistance of counsel because he believes his counsel should have called at trial numerous witnesses who were not called. The trial court heard the testimony of these witnesses at the hearing after remand and then entered findings of fact which summarized the substance of their testimony.

Dr. David Hall, child psychiatrist, indicated that Jean had some difficulty in telling the truth, but that her version of what Sardinia did to her was consistently stated initially and throughout the investigation. Dr. Hall said that there was no question in his mind that Jean believed the events had occurred.

Nurse Patricia Lazear's examination of Jean showed no

immediate injury to Jean's hymen. However, Nurse Lazear testified that Jean might have been penetrated without any evidence of such penetration showing in an examination a month later.

Dr. George Kina, Almond Clinic physician, also examined Jean and stated that Jean's vaginal opening would not admit the tip of his little finger, but that these findings could be consistent with some penetration. Dr. Kina could not say with any medical certainty that Jean had never been penetrated by a finger.

Jean's sister, Lisa, testified that Jean lies a lot, and that when Jean told her about the incidents, Lisa did not pay any attention to her. Lisa said that she got concerned and thought perhaps Jean was telling the truth after the police talked to Lisa.

Sardinia's trial counsel testified at the hearing that he was aware of the medical and police reports and the afore-mentioned witnesses. He stated, however, that Sardinia maintained that he had not committed any of the alleged acts. Because of this defense of complete innocence, the attorney did not choose to call Dr. Hall because of Hall's opinion that Sardinia had molested Jean. Likewise, he did not call Lazear, Kina, or Lisa because their testimony indicated that the acts quite probably had occurred.

█ Applying the *Strickland* test, we must determine whether counsel's failure to call these witnesses fell below an objective standard of reasonableness. *Strickland v. Washington, supra.* Counsel's decision not to call these witnesses constitutes a strategic decision. Such decisions, though perhaps viewed as wrong by others, do not amount to ineffective assistance of counsel. *Strickland,* 466 U.S. at 689. Our review of the testimony of the uncalled witnesses, in light of the wide latitude defense counsel has in making tactical decisions, convinces us that counsel's decision to not call the witnesses was reasonable.

Further, counsel's conduct does not meet the second part of the *Strickland* test. His failure to call these witnesses did not result in the prejudice required to make a showing

of ineffective assistance of counsel. It is impossible for Sardinia to show that, but for counsel's errors, Sardinia would not have been convicted. Viewing the testimony as a whole, we believe that Sardinia would have been convicted even if the uncalled witnesses had testified. Therefore, Sardinia's claim of ineffective assistance of counsel fails.

Accordingly, we affirm Sardinia's conviction.

REED, A.C.J., and PETRICH, J., concur.

Review denied by Supreme Court March 7, 1986.