# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59539-7-II |
| Respondent, | |
| v. | |
| E.O., | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – EO appeals his juvenile court adjudication of first degree child molestation. The adjudication arose from an interaction between EO and a five-year-old girl, KR, in the woods behind KR's house. KR told her father, mother, and a forensic interviewer that EO had molested her. She also testified at trial that EO had molested her.

We hold that (1) the trial court did not abuse its discretion when it ruled KR was competent to testify, (2) EO did not receive ineffective assistance of counsel regarding the competency hearing for KR, and (3) EO did not receive ineffective assistance of counsel regarding a motion to suppress statements he made to a police officer. Accordingly, we affirm EO's adjudication of first degree child molestation.

FACTS

*Background*

In April 2022, KR and another child were playing in the woods near the trailer park where they all lived.  EO also was in the area.  At the time, KR was five, and EO was 12.

When KR returned to her trailer she told her father that EO had licked her vagina.  Shortly thereafter, she also told her mother.  KR's father confronted EO about the incident, and EO denied it had taken place.  KR's parents contacted law enforcement.

Three days after the incident, KR participated in a videotaped forensic interview with Jennifer Mitchell.  In the interview, KR again disclosed that EO had licked her vaginal area.  KR said that when the incident happened her father was at the store and her mother was at the library, so she told her grandmother and grandfather.  She said that she told her parents about the incident when they got back.  KR also told Mitchell that she had three kittens and gave their names.  And KR said that kids would shoot people in the woods.

Deputy Police Chief Casey Meling conducted a follow up interview with EO.  Meling first approached EO's mother and told her that he wanted to ask EO some questions with her permission.  Meling advised her that EO did not have to speak with him, that EO would not be arrested that day, that EO was free to leave, and that she could first consult with an attorney before agreeing to let EO speak with him.  After consulting with her pastor, EO's mother permitted Meling to speak with EO.

Meling then contacted EO.  Before asking EO any questions, Meling repeated the same warnings he gave to EO's mother.  Specifically, Meling recalled that he told EO that he did not have to speak with him, that EO was free to leave, and if EO asked to leave he would be able to.

But Meling could not remember if he told EO that he would not be arrested that day. EO told Meling he understood that he was free to leave and could refuse to answer questions.

Meling conducted the interview while another officer remained at an unmarked police vehicle roughly 50-60 feet away from where the interview took place. EO then admitted to playing with the children in the wooded area at the RV park but denied touching or exposing himself to KR at any time.

The State subsequently charged EO with first degree child molestation involving KR.[1]

*Suppression Motion*

Before trial, defense counsel moved to suppress the statements EO made during the interview with Meling. In her motion to suppress, defense counsel asserted that the statements EO made were illegally obtained under RCW 13.40.740, which provides that a juvenile cannot waive any constitutional rights before consulting with an attorney when they are subject to custodial interrogation. Defense counsel asserted that the questioning was a custodial interrogation because of the number of uniformed officers present, as well as the fact that EO's mother and pastor were present. Counsel emphasized that EO was not provided with an attorney before the interview. Defense counsel did not cite any case law in her motion to suppress.

At the hearing on the suppression motion, the trial court heard testimony from Meling. After this testimony, defense counsel argued that RCW 13.40.740 required that EO be provided an attorney under the circumstances that EO was detained. Defense counsel did not argue that the trial court must consider EO's age in determining whether he was detained.

---

[1] The State also charged EO with first degree child molestation involving the other child. But EO was found not guilty of the charge associated with the other child.

The trial court stated that "I've heard no . . . law argued that custodial interrogation means something different to a juvenile than it does to an adult." Rep. of Proc. (RP) at 38. For this reason, the court said that it would determine whether EO was in custody based upon "the body of case law dealing with a [CrR] 3.5 hearing." RP at 38.

Applying this standard, the trial court denied the suppression motion and entered findings of fact and conclusions of law. The court found that Meling explained to EO that he did not have to answer any questions and that Meling would leave if EO asked him to, and that EO said he understood. The court further found that the officers were not in a position to block EO if he chose to leave and that no weapons or restraints were used. The court concluded that EO was not in custody or detained, and therefore RCW 13.40.740(1) did not apply and *Miranda*[2] warnings were not required.

*Competency Hearing*

The parties agreed it was necessary to hold a hearing on whether KR was competent to testify and whether KR's hearsay statements to her parents and Mitchell were admissible under the child hearsay statute, RCW 9A.44.120. The competency hearing was held in January 2024 when KR was seven years old.

At the hearing, KR's father testified that KR told him that EO "licked my pee pee" immediately after it happened. RP at 65. He said that it did not seem that KR was trying to get EO in trouble. KR's father did not believe that her mother went to the library that day. KR's mother testified that KR told her that EO pulled her pants down and licked her "area." RP at 75. KR's mother said that KR was not trying to get EO in trouble and that she had no reason to be

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

dishonest.  During cross-examination, KR's mother said that she would be surprised if KR said she was at the library that day.

KR testified that she really did not know why she was in court, but that she had promised to tell the truth.  The following exchange occurred:

Q. Okay. Well, you understand that when you sit there -- well, you promised to tell the truth, right?

A. Yeah.

Q. Do you understand what that means?

A. Yeah.

Q. What does it mean?

A. It means that you're not gonna lie and stuff.

Q. Okay. What's a lie?

A. It means, like, if you tell something that's not true and stuff.

Q. Oh, okay. And you're not gonna lie today, are you?

A. No.

RP at 85.

KR said that she was no longer allowed to play with EO, but initially stated that she would not say why.  She then said it was because he did something weird to her.  KR said that in the future she would be able to tell what EO did.

On cross-examination, defense counsel asked if she had three kittens and KR said she did not; she had one cat and one dog.  KR knew the names of her siblings, grandparents, and animals.  KR identified her current teacher and recalled the name of her teacher in the previous year.  She also stated that her previous teacher's name changed because she got married.  KR

then answered a number of questions about school, what she liked to do, her friends, and where her grandparents lived.

The trial court then heard argument regarding the admissibility of KR's hearsay statements and KR's competency. The State briefly discussed KR's competency to testify, stating that "I think it was quite clear that she was competent" because she understood why she was there, she promised to tell the truth and understood the difference between telling the truth and a lie. RP at 95. The State focused its argument on the *Ryan*[3] factors for admissibility of child hearsay under RCW 9A.44.120.

In response, EO argued that KR should be declared not competent to testify at trial. Defense counsel made the following argument:

> The Court should be looking at the basis of knowledge of the child at the time of the incident happened (sic). And I questioned the child with regards to historical issues, which she was unable to answer. Given the history of the case, there was statements that she made in the interview with regards to the number of pets she has, the three kittens she had, and other indications in the interview which are contradicted today, which would be evident that she does not have the mental capacity today that she can remember what occurred two years ago. So, she doesn't -- so, I'm asking the Court to find that she does not have memory sufficient to retain an independent recollection of the occurrence based upon her discussion about the pets. She was totally off with regards to those versus the video, and we can watch the video with regards to what she indicated there. Also, with regards to the sequence of events of that day, those are off also with regards to the parents' testimony.

RP at 96-97.

Defense counsel also made arguments regarding the child hearsay test under *Ryan*, pointing out that EO's statements were unreliable because in the forensic interview KR said she told her mother about the incident after her mother returned from the library, but Wilson said she would be surprised if KR said she was at the library.

---

[3] *State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984).

The trial court provided an oral ruling that KR was competent to testify. The court emphasized that KR was "very forthcoming; came up, approached the witness stand without hesitancy." RP at 98-99. The court found that KR understood the difference between the truth and a lie and observed that KR said that she would tell the truth. The court stated that KR had the ability to understand the questions and responded appropriately, and even tried to correct something that she believed was inaccurate. Therefore, the court saw no issue with KR's ability to testify. Regarding her memory of the incident, the court noted that KR was hesitant to say exactly what happened. But she did say that EO did "something weird," indicating that she understood what was going to be talked about at trial. RP at 100. Therefore, the court found that KR was able to remember the incident.

The trial court entered two written findings of fact regarding KR's competency, finding that KR "understands the difference between truth and a lie" and that KR "has a memory of the alleged events." Clerk's Papers (CP) at 63. Based on these findings the court entered a conclusion of law that KR was competent to testify.

Regarding the child hearsay statute, the trial court pointed out that although there was some "inconsistency in the disclosures" KR made, this went "to the weight and the credibility, and not to the admissibility." RP at 102. The court entered findings of fact regarding the *Ryan* factors. The court concluded that "[t]he time, content, and circumstances of the statements provided sufficient indicia of reliability" and ruled that KR's statements to her parents were admissible. CP at 64.

*Trial and Verdict*

At trial, KR's father and mother testified about KR's disclosures of the molestation to them. When KR testified at trial, she again promised to tell the truth. She also answered

7

questions about her understanding of the difference between the truth and a lie, saying that it would not be true if the prosecutor claimed it was nighttime during the daytime. KR testified that EO licked her private area. She said she then told her father what had happened. EO conducted an extensive cross-examination using the recording of the forensic interview. KR denied that she told her grandparents about the incident before she told her father.

Meling testified that he had the opportunity to talk with EO. However, he did not testify about anything EO said to him.

In his defense, EO called his stepfather, who testified that he was watching EO at the time of the alleged incident and that EO was digging in the dirt alone at the time of the alleged abuse. EO also called an expert witness, who asserted that the methodology used in KR's forensic interview made KR's disclosures at the interview unreliable. EO testified and denied that he made sexual contact with KR and asserted that he was not paying any attention to KR on the day of the alleged incident.

The State then recalled Meling. He testified that when he interviewed EO, EO told him he was playing with the kids on the day of the alleged abuse.

The trial court found EO guilty of first degree child molestation. EO appeals the court's adjudication.

ANALYSIS

A.    COMPETENCY OF CHILD WITNESS

EO's assignments of error are limited to claims of ineffective assistance of counsel. But EO also suggests that the trial court erred when it ruled KR was competent to testify at trial, so we will address that issue. We disagree.

1. Legal Principles

Under RCW 5.60.050, all witnesses – including child witnesses – are presumed to be competent to testify unless proved otherwise by a preponderance of the evidence. *State v. Brousseau*, 172 Wn.2d 331, 341, 259 P.3d 209 (2011). The bar for competence is low. *State v. Houser*, 30 Wn. App. 2d 235, 257, 544 P.3d 564, *review denied*, 3 Wn.3d 1015 (2024). And the party challenging the witness's competency has the burden of proof. *Id.*

The Supreme Court in *State v. Allen*, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967) outlined the test a trial court uses to assess the competency of a child witness. *Houser*, 30 Wn. App. 2d at 256-57. A child witness is competent to testify if the witness possesses:

> "(1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it."

*Id.* at 256-57 (quoting *Allen*, 70 Wn.2d at 692). Written findings on the *Allen* factors are not required, although trial courts are encouraged to enter written findings. *In re of Dependency of A.E.P.*, 135 Wn.2d 208, 223, 956 P.2d 297 (1998). "[T]the party seeking to prevent such a child from testifying has the burden of providing a compelling reason for questioning the child's competence." *State v. S.J.W.*, 170 Wn.2d 92, 101, 239 P.3d 568 (2010).

We review a trial court's ruling on a child's competency to testify for an abuse of discretion. *Houser*, 30 Wn. App. 2d at 257. "A trial court abuses its discretion if its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons." *Id.*

" 'There is probably no area of law where it is more necessary to place great reliance on the trial court's judgment than in assessing the competency of a child witness.' " *Id.* at 257 (quoting *State v. Woods*, 154 Wn.2d 613, 617, 114 P.3d 1176 (2005)). As a result, we give great

deference to the trial court's child competency ruling. *Houser*, 30 Wn. App. 2d at 257. This is because it is difficult to determine the competence of a young witness from a written record, and the trial court is in the best position to observe the witness's manner and demeanor and to assess their capacity and intelligence. *Id.*

We review a trial court's findings of fact to determine if substantial evidence supports them. *Id.* at 257. Unchallenged findings are verities on appeal. *State v. Johal*, 33 Wn. App. 2d 408, 413, 561 P.3d 1235, *review denied,* 4 Wn.3d 1028 (2025).

2.    Analysis

EO argues that the record does not support the trial court's competency ruling because KR did not meet the first three *Allen* factors. We disagree.

The first *Allen* factor is the child's understanding of the obligation to speak the truth. *Houser*, 30 Wn. App. 2d at 256. Here, KR expressly acknowledged that she promised to tell the truth and stated that she was not going to lie. And the trial court made an unchallenged finding of fact that KR "understands the difference between truth and a lie." CP at 63. This finding is a verity on appeal. *Johal*, 33 Wn. App. 2d at 413. We conclude that KR's testimony and the court's finding are sufficient to satisfy the first *Allen* factor.

EO argues that the first *Allen* factor was not met because *State v. Sardinia*, 42 Wn. App. 533, 713 P.2d 122 (1986) requires a witness to understand they will get into trouble if they lie on the stand. But *Sardinia* does not create such a requirement and the court in that case did not analyze the first element of the *Allen* test. *Id.* at 537.

The second *Allen* factor is the child's mental capacity at the time of the incident at issue to receive an accurate impression of the incident. *Houser*, 30 Wn. App. 2d at 256. This factor "may be demonstrated by the child's ability to recall events or circumstances occurring before

10

the abuse or during the time period of the abuse." *Woods*, 154 Wn.2d at 619. "If the child demonstrates she had the ability to accurately perceive events prior to the abuse, the court can infer that the ability also existed at the time of the abuse." *Id.* at 621. In addition, the second *Allen* factor may be met if the trial court infers the child was able to accurately perceive events based upon the "child witness's 'overall demeanor and the manner of her answers.' " *Id.* at 621-22 (quoting *Sardinia,* 42 Wn. App. at 537).

Here, neither the State nor EO asked KR to recall events and circumstances during the time period of the abuse. And the trial court did not expressly address the second *Allen* factor in either its oral ruling or the written findings of fact.

However, the trial court may have relied on the KR's overall demeanor to determine KR was able to form a memory of the incident, as allowed in *Woods*, 154 Wn.2d at 617. The court observed that KR was very forthcoming and did not hesitate to provide her testimony. The court also noted that KR corrected counsel when she heard things she believed were not accurate. The court could have inferred from its observation of KR on the witness stand that she had the mental capacity at the time of the incident to receive an accurate impression of the incident.

A similar situation was presented in *Sardinia*, 42 Wn. App. at 537. The court stated,

> Although [the victim's] testimony does not as clearly reveal her mental capacity at the time of the occurrence, . . . *her overall demeanor and the manner of her answers were sufficient to permit the trial court to infer this aspect of the Allen test*. This seems particularly true considering that such a judgment is always highly subjective. Certainly there was nothing revealed by her testimony which would logically suggest a contrary conclusion. A trial court must necessarily be clothed with wide discretion in these matters. The competency of a youthful witness is not easily reflected in a written record. *Allen*, 70 Wn.2d at 692. Because the trial judge witnessed the child's manner and heard her answers, he is in a better position than we are to make the determination of her competency. There has been no showing of a manifest abuse of discretion on this issue.

*Id.* (emphasis added).

We conclude that given the trial court's broad discretion and the court's ability to observe KR's demeanor, this record is sufficient to satisfy the second *Allen* factor.

The third *Allen* factor is whether the child had sufficient memory to retain an independent recollection of the incident. *Houser*, 30 Wn. App. 2d at 256-57. KR was consistent in describing the nature of the sexual contact EO had with her to both of her parents and in the forensic interview. KR refused to explicitly state at the competency hearing what EO did to her. But as the trial court observed, KR's hesitancy at the competency hearing likely was explained by her discomfort with the subject and she did say that EO did "something weird" to her. RP at 100. And the court made an unchallenged finding of fact that KR "has a memory of the alleged events." CP at 63. The finding is a verity on appeal. *Johal*, 33 Wn. App. 2d at 413. We conclude that the record and the trial court's finding are sufficient to satisfy the third *Allen* factor.

The standard of review is abuse of discretion and we give great deference the trial court's child competency ruling. *Houser*, 30 Wn. App. 2d at 257. Accordingly, we hold that the court did not abuse its discretion when it determined that KR was competent to testify at trial.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

EO asserts that he received ineffective assistance of counsel in two ways. First, he contends that his counsel provided ineffective assistance at the competency hearing by failing to properly argue the first three *Allen* factors. Second, he claims that defense counsel provided ineffective assistance at the suppression hearing relating to EO's interview with Meling by failing to argue that the trial court should apply a "reasonable child" standard to determine if EO was in custody. We conclude that EO cannot establish that he was prejudiced by any deficient performance.

1.    Legal Principles

Ineffective assistance of counsel is a constitutional error, arising from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). To prevail on an ineffective assistance claim, the defendant must show that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Id.*

Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *State v. Vazquez*, 198 Wn.2d 239, 247-48, 494 P.3d 424 (2021). We apply a strong presumption that defense counsel's performance was reasonable. *Bertrand*, 3 Wn.3d at 128. To rebut that presumption , a defendant bears the burden of establishing the absence of any legitimate strategic or tactical reason explaining counsel's conduct. *Vasquez*, 198 Wn.2d at 248. "[T]he defendant bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.' " *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

Failure to investigate evidence, at least when coupled with other defects, can amount to ineffective assistance of counsel. *State v. A.N.J.*, 168 Wn.2d 91, 110, 225 P.3d 956 (2010); *see also In re Pers. Restraint of Brett*, 142 Wn.2d 868, 882, 16 P.3d 601 (2001). "Defense counsel must, 'at a minimum, *conduct a reasonable investigation* enabling [counsel] to make informed decisions about how best to represent [the] client.' " *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 721, 101 P.3d 1 (2004) (alterations in original) (quoting *Brett*, 142 Wn.2d at 873). "This includes investigating all reasonable lines of defense, especially 'the defendant's most important

defense.' " *Davis*, 152 Wn.2d at 721 (quoting *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001)).

Prejudice exists if there is a reasonable probability that the result of the trial would have been different but for defense counsel's deficient performance. *Bertrand*, 3 Wn.3d at 129. This standard is lower than the preponderance of the evidence standard. *Id.* But the defendant must show more than that a different outcome is conceivable. *Id.*

2. Competency Hearing

EO argues that he received deficient representation at the competency hearing for KR because defense counsel failed to conduct a reasonable investigation into the facts of the case, which in turn caused her to fail to point to available evidence which could convince the trial court to find KR incompetent to testify.[4] We disagree.

First, EO argues that defense counsel failed to make any argument regarding first *Allen* factor, the child's understanding of the obligation to speak the truth. EO claims that KR's testimony at the competency hearing about telling the truth was insufficient, but she does not explain why. KR clearly testified that she promised to tell the truth, that she understood the difference between the truth and a lie, and that she was not going to lie. EO's only argument is that *Sardinia*, 42 Wn. App. at 536, required evidence that KR could get in trouble if she lied in court. But as discussed above, *Sardinia* does not impose such a requirement.

There is no indication that defense counsel could have made effective arguments regarding this factor or that such arguments would have made a difference. We conclude that EO's ineffective assistance of counsel claim on this basis fails.

---

[4] EO also argues that defense counsel was ineffective because the State, rather than defense counsel, initially asked the trial court for a hearing on KR's competency. Because the court held a hearing on KR's competency, EO cannot show he was prejudiced by this purported error.

Second, EO argues that defense counsel was deficient in arguing the second *Allen* factor, the child's mental capacity at the time of the incident at issue to receive an accurate impression of the incident. Defense counsel argued that "[t]he Court should be looking at the basis of knowledge of the child at the time of the incident happened (sic). And I questioned the child with regards to historical issues, which she was unable to answer." RP at 96. EO asserts that defense counsel should have referenced KR's statement in the forensic interview that she would shoot people in the woods. He claims that this showed that KR was engaging in fantasy and reporting it as real.

Defense counsel could have referenced the statement about shooting people. But it is unclear whether KR was talking literally about shooting people or just describing a game the kids played. EO has not satisfied his burden to show that making this argument would have made any difference. EO does not point to any other argument that defense counsel could have made. We conclude that EO's ineffective assistance of counsel claim on this basis fails.

Third, EO argues that defense counsel failed to make sufficient arguments regarding third *Allen* factor, whether the child had sufficient memory to retain an independent recollection of the incident. Defense counsel argued that KR did not "have the mental capacity today that she can remember what occurred two years ago" based on KR's false statement in the forensic interview that she had three kittens and "other indications in the interview which are contradicted today." RP at 96. EO claims that defense counsel also should have referenced the fact that KR stated in the forensic interview that she told her grandparents about the molestation first, when her father and mother said that she told them immediately after the incident.[5]

---

[5] EO refers to the fact that at trial KR denied telling her grandparents about the incident first and said that the forensic interview occurred "yesterday." RP at 169. But that testimony was not

15

Defense counsel could have referred specifically to the discrepancy regarding who KR told first instead of more generally referring to other contradictions in the interview. But the trial court was convinced by KR's testimony that KR remembered the incident. EO has not satisfied his burden to show that a more specific argument would have made any difference. We conclude that EO's ineffective assistance of counsel claim on this basis fails.

Fourth, EO generally argues that defense counsel should have emphasized that KR's answers about whether her clothes were on and whether her underwear had been pulled down changed after the interviewer kept asking the same question. But again, EO has not satisfied his burden to show that this argument would have made any difference. We conclude that EO's ineffective assistance of counsel claim on this basis fails.

In summary, we hold that EO did not receive ineffective assistance of counsel with regard to the competency hearing.

3.    Suppression Motion

EO argues that he received deficient representation at his suppression hearing because defense counsel failed to argue that his age should be taken into consideration when determining whether he was in custody when Meling interviewed him. The State concedes that defense counsel failed to make this argument but argues that EO was not prejudiced by the defense counsel's performance. We agree with the State.

a.    Legal Principles

RCW 13.40.740(1) provides that law enforcement must provide a juvenile with access to an attorney for consultation before (a) conducting a "custodial interrogation" or (b) detaining the

___

given at the competency hearing. EO also claims that KR did not remember that the forensic interview was on camera. But the record does not support that claim.

juvenile "based on probable cause of involvement in criminal activity." RCW 13.40.740(1)(a), (b). Statements made during a custodial interrogation or a detention before the juvenile is provided access to an attorney generally are inadmissible. RCW 13.40.740(3). But such statements are admissible for impeachment purposes. RCW 13.40.740(3)(b).

Apart from the statute, *Miranda* requires that before subjecting a person to custodial interrogation, law enforcement officers are required to inform the person of the right to remain silent and the right to an attorney. *State v. Escalante*, 195 Wn.2d 526, 532, 461 P.3d 1183 (2020). If a person is not informed of their *Miranda* rights, a person's statements made during a custodial interrogation are inadmissible. *Id.* But there is an exception that "allows the prosecution to introduce into evidence the defendant's statements that were voluntarily made – but obtained without *Miranda* warnings – to impeach the credibility of a testifying defendant." *Id.* at 532-33 n.3; *see also State v. Borsheim*, 140 Wn. App. 357, 371, 165 P.3d 417 (2007).

For *Miranda* purposes, a person is in custody when "a reasonable person in the suspect's position would feel restrained to the degree associated with formal arrest." *Escalante*, 195 Wn.2d at 533-34. To determine whether a reasonable person in the suspect's position would feel restrained to the degree associated with formal arrest, we consider the totality of the circumstances. *Id.* This totality of the circumstances analysis applies to juveniles. *State v. Unga*, 165 Wn.2d 95, 103, 196 P.3d 645 (2008). Relevant circumstances for a juvenile include the suspect's age, experience, intelligence, education, and background as well as their capacity to understand any warnings given and the consequences of waiving these rights. *Id.* And courts have a "responsibility to examine confessions of a juvenile with special care." *Id.*

EO notes that the United States Supreme Court in *J.D.B. v. North Carolina* held that a child's age must be considered as part of the totality of the circumstances analysis. 564 U.S.

17

261, 271-72, 131 S. Ct. 2394, 180 L. Ed. 2d 310 (2011). The Court stated, "In some circumstances, a child's age 'would have affected how a reasonable person' in the suspect's position 'would perceive his or her freedom to leave.' That is, a reasonable child subjected to police questioning will sometimes feel pressured to submit when a reasonable adult would feel free to go." *Id.* (quoting *Stansbury v. California*, 511 U.S. 318, 325, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994)).

The text of RCW 13.40.740 does not modify the custodial interrogation analysis established by the case law discussed above. The definition of custodial interrogation found in RCW 13.40.020(10) states that custodial interrogation occurs when "reasonable individuals in the same circumstances would consider themselves in custody."

   b. Analysis

EO argues that defense counsel was deficient for failing to argue that his age must be considered when determining whether he was in custody for purposes of RCW 13.40.740(1) at the time of the Meling interview as held in *Unga*, 165 Wn.2d at 103, and *J.D.B.*, 564 U.S. at 271-72. We agree. And this failure apparently influenced the trial court, which said "I've heard no . . . law argued that custodial interrogation means something different to a juvenile than it does to an adult." RP at 38. The question here is whether EO can show that defense counsel's deficient performance prejudiced him.

Focusing only on RCW 13.40.740(1), there could be no prejudice. Statements made when RCW 13.40.740(1) has been violated still are admissible for impeachment purposes. RCW 13.40.740(3)(b). EO testified that he was not paying attention to KR at the time of the incident. The State impeached that testimony with Meling's testimony that EO told him that he was playing with the kids on the day of the incident. Therefore, even if EO's statements to Meling

18

were suppressed because of an RCW 13.40.740(1) violation, they still would have been admissible to impeach EO's testimony.

EO also argues that defense counsel was deficient in relying only on RCW 13.40.740 rather than on his *Miranda* and self-incrimination rights. But as noted above, statements made in violation of *Miranda* are admissible for impeachment purposes. *Escalante*, 195 Wn.2d at 532-33 n.3. Meling's testimony that EO stated that he was playing with KR impeached EO's contrary testimony. Therefore, even if EO's statements to Meling were suppressed under *Miranda*, they still would have been admissible to impeach EO's testimony.

We hold that EO's ineffective assistance of counsel claim on this basis fails.

CONCLUSION

We affirm EO's adjudication for first degree child molestation.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, C.J.

VELJACIC, J.